UNITED STATES of America, Appellee,

v.

Ronald USTICA, Joseph Testa, and Anthony Senter, Defendants–Appellants.

Nos. 830–832, Dockets 88–1003
to 88–1005.

United States Court of Appeals,
Second Circuit.

Argued Feb. 11, 1988.

Decided Feb. 16, 1988.

Opinion May 16, 1988.

Walter S. Mack, Jr., Asst. U.S. Atty., S.D.N.Y. (Aaron R. Marcu, Asst. U.S. Atty., Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., of counsel), for appellee.

Judd Burstein, New York City (Lee Ginsberg, Freeman, Nooter & Ginsberg, New York City, of counsel), for defendant-appellant Ustica.

Diarmuid White, New York City (Lipsitz, Green, Fahringer, Roll, Schuller & James,

New York City, Harold Price Fahringer and Benjamin Brafman, New York City, of counsel), for defendants-appellants Testa and Senter.

Before LUMBARD and CARDAMONE, Circuit Judges, and LEISURE, District Judge [*].

LEISURE, District Judge:

This is a consolidated appeal, by three criminal defendants, from an order, by the United States District Court for the Southern District of New York, granting the government's motion to allow retrial of the defendants on a charge of violating 18 U.S.C. § 241.[1]

The three defendants—Ronald Ustica, Joseph Testa, and Anthony Senter—were originally tried on a multi-count indictment charging several federal crimes. The jury found Ustica guilty of violating § 241; the jury also convicted Ustica of violations of 18 U.S.C. § 2314 and 18 U.S.C. § 371.[2] Testa and Senter were acquitted of violating both § 2314 and § 371, but the jury could reach no verdict as to whether Testa and Senter had violated § 241. Thus, as to Testa and Senter, the district court declared a mistrial on Count Four of the indictment, which charged the defendants with violations of § 241.

Ustica appealed from his conviction. On January 21, 1987, this Court held that the evidence presented at trial was, as a matter of law, insufficient to support defendant Ustica's conviction on the § 241 count. *United States v. Gaggi*, 811 F.2d 47, 58 (2d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987). Ustica's

other convictions, for violations of § 2314 and § 371, were affirmed. *Id.* at 63.

Because Ustica's conviction on the § 241 count was set aside on the ground of insufficient evidence, we hold that a new trial on that count would subject him to double jeopardy in violation of the fifth amendment of the Constitution. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). However, because Testa's and Senter's first exposure to jeopardy on the § 241 count did not terminate when the original trial court declared a mistrial, we hold that Testa and Senter have no valid double jeopardy claim to prevent retrial on that count of the indictment. *See Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984).

After hearing argument on February 11, 1988, this Court filed an Order on February 16, 1988, reversing the district court's order with respect to Ustica, and affirming the order with respect to Testa and Senter, noting that this opinion would follow.

### FACTUAL BACKGROUND [3]

On October 4, 1984, the government filed a 78-count indictment naming twenty-four defendants, including the appellants, and alleging eleven different conspiracies.[4] Among the various alleged acts covered by the indictment were twenty-seven murders, illegal narcotics transactions, extortionate credit transactions, the interstate transportation of stolen automobiles, and bribery of a juror. All twenty-four defendants were charged with participation in a racketeering enterprise in violation of 18 U.S.C. § 1962. The case was assigned to United States District Judge Kevin Thomas Duffy.

---

[*] Hon. Peter K. Leisure, United States District Judge for the Southern District of New York, sitting by designation.

1. 18 U.S.C. § 241 makes it a crime for "two or more persons [to] conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same...."

2. 18 U.S.C. § 2314 proscribes the transportation of stolen property in interstate and foreign commerce. 18 U.S.C. § 371, the federal conspiracy

statute, makes it illegal to conspire to commit, as charged in this case, the substantive crime of transporting such stolen property.

3. Much of the factual background of this case has been discussed in *United States v. Gaggi*, 811 F.2d at 49–53. We discuss here only those facts relevant to the issues presently on appeal.

4. The indictment filed on October 4, 1984, superseded the original indictment filed on January 30, 1984, and two superseding indictments filed on March 29, 1984, and September 14, 1984.

On September 9, 1985, Judge Duffy severed, for separate trial, twenty-three counts of the indictment, which charged ten of the defendants, including appellants, with crimes related to a stolen car business.[5] That trial, which is of concern to this appeal, began on September 30, 1985, and lasted until March 5, 1986.[6] Five of the defendants, including Ustica, were convicted of conspiring to transport stolen property in violation of 18 U.S.C. § 371; Testa and Senter were acquitted of that charge. Three of the defendants, including Ustica, were convicted of various counts charging interstate or foreign transportation of stolen property, in violation of 18 U.S.C. § 2314; Testa and Senter were acquitted of the counts in which they were named. On the § 241 count that is the subject of this appeal, Ustica and one other defendant were convicted of a conspiracy to deny the civil rights of two murder victims; the jury was unable to reach a verdict on this count as to Testa and Senter.[7]

Relevant to this appeal are certain trial proceedings relating to the § 241 count. It was the government's case that the defendants conspired to murder Ronald Falcaro and Kalid Fahd Darwish Daoud, two men involved in the export of cars to Kuwait. Ustica wanted Falcaro and Daoud killed after he saw them copying vehicle identification numbers of the defendants' stolen cars. As previously stated, the jury was unable to reach a verdict, as to Testa and Senter, on this count. The government endeavored to show that Ustica and his cohorts feared that Falcaro and Daoud were gathering information which would expose defendants' stolen car scheme to law enforcement authorities; that on Octo-

ber 12, 1979, one of the defendants, Henry Borelli, and an unindicted coconspirator, Roy DeMeo, shot and killed Falcaro and Daoud; that Testa and Senter participated in the dismemberment of the victims' bodies with boning knives and saws; and that the victims' body parts were wrapped in garbage bags and hauled away by Senter in a private sanitation truck.

On Thursday, January 30, 1986—*prior* to the close of the government's case, but after the government had presented its evidence on the § 241 violation—the defendants moved, pursuant to Fed.R.Crim.P. 29, for judgments of acquittal on the § 241 count. Although the government had not completed its direct case, the defense's Rule 29 motion relating to § 241 was argued, by agreement of counsel and the trial court, as if the prosecution had rested. The defendants claimed that the government had failed to prove the American citizenship of the victims, which the defendants argued was an essential element of a violation of § 241. Section 241 makes it a crime to conspire "to injure, oppress, threaten, or intimidate any *citizen* in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States," 18 U.S. C. § 241 (emphasis added). Judge Duffy denied defendants' Rule 29 motion, ruling that § 241 protects not just the civil rights of American citizens, but of "all those people who would be protected by the constitutional requirements of due process"—including non-resident aliens. At that time, however, Judge Duffy also indicated that he intended "to give the jury a special question in connection with [the issue of citizenship]."

---

5.  Along with Ustica, Testa, and Senter, the other defendants tried for participation in the stolen car ring were Paul Castellano, Anthony Gaggi, Henry Borelli, Peter La Froscia, Ronald Turekian, Edward Rendini, and Richard Mastrangelo. Castellano was murdered during the trial. Mastrangelo was acquitted by the Court at the close of the government's case.

6.  For that trial on the severed charges, the indictment of October 4, 1984, was redacted to include only the severed charges, and the counts were accordingly renumbered. The charges un-

der 18 U.S.C. § 241, against Ustica, Testa, and Senter, which were contained in Count Four of the indictment filed on October 4, 1984, were contained in Count Twenty-Three of the redacted indictment.

7.  At trial, defendant Ronald Turekian was also convicted on four mail fraud counts related to his participation in the stolen car ring. 18 U.S. C. § 1341 makes it a federal crime to commit mail fraud.

Prior to defendants' Rule 29 motion, the government had testimony, by victim Falcaro's wife, which made reference to Falcaro's residence status at the time of the murders. Specifically, Falcaro's wife testified that at the time of his death, her husband resided in Nassau County, was licensed by New York State as an automobile dealer, and paid both state and federal taxes. However, when defendants made their Rule 29 motion, prior to the actual close of the government's case, the government did not seek to introduce any additional evidence going to the citizenship of the victims.[8]

Following Judge Duffy's holding on the Rule 29 motion, the government continued, and concluded, its case on the next trial day: Monday, February 3, 1986. The defense presented a short case, and rested, on Tuesday, February 4. Later that same day, after both the government and the defendants had already rested their cases, the government moved to reopen its direct case for the sole purpose of introducing into evidence the American birth certificate of victim Falcaro. The government's application was denied by the court.

As Judge Duffy had indicated earlier, he did instruct the jury to consider specially the issue of the victims' citizenship.[9] The jury found that victim Falcaro was an American citizen.

When Ustica appealed his conviction, however, this Court determined that "[t]he evidence as to both victims fails to satisfy the government's burden of proof [on the § 241 count]." *United States v. Gaggi*, 811 F.2d at 58. After determining that an essential element of a violation of § 241 is the American citizenship of the victim, *id.* at 53–58, this Court explained that "Daoud is a Jordanian citizen, not an American citizen. The jury found that Falcaro was a United States citizen, but on the evidence presented, no rational jury could have found Falcaro to be a citizen beyond a reasonable doubt." *Id.* at 58.

Following this Court's decision in *Gaggi*, Judge Duffy recused himself from further involvement in the case, and the case was reassigned to Judge Vincent L. Broderick. On June 2, 1987, the government moved, before Judge Broderick, for an order permitting retrial of Ustica, Testa, and Senter on the § 241 count of the indictment; the defendants moved to bar retrial. On December 30, 1987, Judge Broderick granted the government's motion as to all three defendants.

## DISCUSSION

### A. *Defendant Ustica*

The fifth amendment of the Constitution provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb."

■ It has long been established that the Double Jeopardy Clause generally will not bar reprosecution where a convicted defendant has managed, through an appeal, to set aside his conviction. *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). However, there is one clear exception to this rule: where a conviction is set aside on appeal on the ground of insufficiency of the evidence, a new trial

8. During oral argument of this appeal, government counsel stated that the American birth certificate of victim Falcaro was pre-marked as an exhibit and available to be introduced into evidence, but was not proffered at that time, apparently because of inadvertence or mistake. *See* discussion, *infra*, at Note 12.

9. Judge Duffy instructed the jury that:
"[w]e have not had in this record any evidence, any birth certificate or naturalization papers for either Falcaro or Daoud. As to Falcaro, you can, but you don't have to, infer his citizenship from other evidence in the case.
＊　＊　＊　＊　＊　＊

In considering this count, I want you to be aware of the fact that Daoud was in possession, according to the testimony, Daoud was in possession of a Jordanian passport at the time he was killed. From that you could conclude that Daoud was Jordanian and not a United States citizen.
This is an area of the law, ladies and gentlemen, which is far from being clear. With that in mind, I am asking you to answer a specific question. First of all, I want you to consider Falcaro and Daoud separately. Secondly, I want you to answer a special question. The special question is: Was Ronald Falcaro a citizen of the United States?

will subject the defendant to double jeopardy, and thus such retrial is barred. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *see also Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).

This exception to the double jeopardy rule is based on the premise that in the context of double jeopardy, an appellate reversal for evidentiary insufficiency is no different from a trial court acquittal on grounds that the evidence will not support a conviction. Rule 29 of the Federal Rules of Criminal Procedure provides that a district court "shall order the entry of [a] judgment of acquittal" if it determines that the evidence is insufficient. Fed.R.Crim.P. 29. When such a judgment of acquittal is entered by the district court, a defendant may not be retried for the same offense. *See Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962); *Kepner v. United States*, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904). In *Burks*, Chief Justice Burger, writing for a unanimous Court,[10] explained that just as a defendant cannot be retried for the same offense when a district court determines that the evidence presented at trial requires a judgment of acquittal, "it should make no difference [for double jeopardy purposes] that the *reviewing* court, rather than the trial court, determine[s] the evidence to be insufficient." *Burks*, 437 U.S. at 11, 98 S.Ct. at 2147 (emphasis in original). Justice O'Connor has similarly written for the Court that "[a] verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial. A reversal [by an appellate court] based on the insufficiency of the evidence has the same effect because it means that no rational factfinder could have voted to convict the defendant." *Tibbs v. Florida*, 457 U.S. at 41, 102 S.Ct. at 2217.

That a defendant may not be retried following an acquittal or a reversal for insufficient evidence is "explainable by reference to the underlying purposes of the Double Jeopardy Clause." *United States v. Scott*, 437 U.S. at 91, 98 S.Ct. at 2194. *See also Tibbs*, 457 U.S. at 41, 102 S.Ct. at 2217. The Double Jeopardy Clause "attaches particular significance to an acquittal," and "[t]o permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent he may be found guilty.'" *Scott*, 437 U.S. at 91, 98 S.Ct. at 2194 (citation omitted). *See also Tibbs*, 457 U.S. at 41, 102 S.Ct. at 2217; *United States v. DiFrancesco*, 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980).

Moreover, the public has no interest in the retrial of a defendant whose conviction has been reversed based on insufficiency of the evidence. Because a jury's *verdict* of acquittal is treated as being absolutely final and bars retrial, "it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." *Burks*, 437 U.S. at 16, 98 S.Ct. at 2150. Thus, as then Justice Rehnquist wrote for the Court, "[a] judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal." *Scott*, 437 U.S. at 91, 98 S.Ct. at 2194.

■ Neither party disputes that in *United States v. Gaggi, supra*, this Court reversed defendant Ustica's conviction on grounds of insufficient evidence.[11] This Court determined that "on the evidence

10. Justice Blackmun took no part in the decision in that case.

11. *Cf. Tibbs v. Florida*, 457 U.S. 31, 44–47, 102 S.Ct. 2211, 2219–21, 72 L.Ed.2d 652 (1982) (noting a distinction between appellate reversals based on weight of the evidence and appellate reversals based on insufficiency of the evidence, the Court explained that "[w]e have no reason to believe that today's decision will erode the demonstrated ability of judges to distinguish legally insufficient evidence from evidence that rationally supports a verdict.").

presented, no rational jury could have found Falcaro to be a citizen beyond a reasonable doubt," and that therefore the evidence "was insufficient as a matter of law to support the conviction [of Ustica] under § 241." 811 F.2d at 58.

The government argues, however, that retrial of Ustica should nonetheless be permitted because the evidence was insufficient only as a result of an "error" by the trial court.[12] Rejecting this argument, Judge Broderick found below that "[d]efendant Ustica is correct that Judge Duffy's ruling excluding Mr. Falcaro's birth certificate cannot be considered erroneous." But this Court need not determine whether Judge Duffy did indeed commit trial error, because appellate reversal, based on insufficient evidence, bars retrial even if some trial error caused the evidentiary insufficiency.

■ In our opinion, the issue of trial error is irrelevant to double jeopardy analysis where a defendant's conviction has been reversed on appeal because of insufficient evidence. Where a trial court grants a defendant's motion for acquittal, or where an appellate court reverses a conviction because of insufficient evidence, it makes no difference whether any failure of proof

is the fault of the government or the result of an erroneous ruling by the trial court. In *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), decided the same day as *Burks*, the trial court had made what "is properly to be characterized as an erroneous evidentiary ruling, which led to an acquittal for insufficient evidence." *Sanabria*, 437 U.S. at 68–69, 98 S.Ct. at 2180–81. Yet the Supreme Court concluded "[t]hat judgment of acquittal, however erroneous, bars further prosecution on any aspect of the count and hence bars appellate review of the trial court's error." *Id.* Similarly, in *United States v. Scott*, the Court concluded that the Double Jeopardy Clause does not allow a second trial after an acquittal based on the insufficiency of the evidence, "however mistaken the acquittal may have been." *Scott*, 437 U.S. at 91, 98 S.Ct. at 2194. Consistent with this analysis, the Court in *Burks* distinguished appellate reversals based on insufficient evidence, where retrial is never permitted, from reversals involving trial court error, where retrial may be permitted in certain circumstances. *Burks*, 437 U.S. at 14–16, 98 S.Ct. at 2148–50.[13]

As we observed above, to permit a second trial following a reversal for insuffi-

12. The government does not contend that Judge Duffy's actual decision, prohibiting the government from introducing Falcaro's birth certificate into evidence *after both the prosecution and the defense had rested,* should be considered "erroneous." The government's appeal brief explicitly states that it "does not assign [Judge Duffy's decision to deny the government's motion to reopen its case, after both sides had rested, for the purpose of introducing the birth certificate] as the error that necessitated a new trial for Ustica." The government does claim, however, that the "error" below was "Judge Duffy's erroneous interpretation of § 241 to cover lawfully present aliens [rather than only citizens]." According to the government, "[i]t was that error that led to the reversal in this case and, not insignificantly, that plainly prompted Judge Duffy to reject the Government's only slightly belated offer of the Falcaro birth certificate."

At trial, the government was warned by the court on Thursday, January 30, 1986—four days prior to the actual close of the government's case—that a special verdict would be submitted to the jury on the issue of citizenship. *See* discussion, *supra,* at p. 44. Govern-

ment counsel stated at oral argument before this Court that it was the government itself that failed to offer the birth certificate into evidence in a timely fashion, and that it was a failure of communication between government trial counsel that caused the government not to seek to introduce the birth certificate when defendants made their Rule 29 motion. The government also stated that it never asked victim Falcaro's widow, a witness at the trial, whether her husband was a citizen, because the government had intended to introduce the birth certificate into evidence during the presentation of its case—something that was not accomplished because of inadvertence or mistake. With laudable candor, government counsel acknowledged during oral argument of this appeal that the government's handling of the birth certificate at trial was a major mistake.

13. The *Burks* Court drew such a distinction despite noting that "[t]here is no claim in this case that the trial court committed error by excluding prosecution evidence which, if received, would have rebutted any claim of evidentiary insufficiency." *Burks,* 437 U.S. at 5 n. 4, 98 S.Ct. at 2144 n. 4.

cient evidence "would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent he may be found guilty.'" *Scott*, 437 U.S. at 91, 98 S.Ct. at 2194 (citation omitted) (discussing the risks associated with retrial following an acquittal for insufficient evidence). This high risk exists whether or not error by the trial court caused the evidentiary insufficiency. The effect on the defendant is the same. The defendant must again undergo the trauma and difficulties of trial and jury verdict—in short, he must suffer double jeopardy.

We therefore hold that any retrial of Ustica on the § 241 count would subject him to double jeopardy, in violation of the fifth amendment of the Constitution. We are well aware that the jury found that Ustica played a role in heinous and barbarous murders, but we are also aware that "where the Double Jeopardy Clause is applicable ... [t]here are no 'equities' to be balanced, for the Clause has declared a constitutional policy, based on grounds which are not open to judicial examination." *Burks*, 437 U.S. at 11 n. 6, 98 S.Ct. at 2147 n. 6.

## B. *Defendants Testa and Senter*

■ Although Ustica was convicted on the § 241 count of the indictment, the jury could reach no verdict with respect to whether Testa and Senter had violated § 241. The trial court therefore declared a mistrial, as to Testa and Senter, on the § 241 count.

It has long been established that where a mistrial is declared because of the failure of a jury to reach a verdict, there is no double jeopardy bar to retrial of the defendant. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 579–80, 6 L.Ed. 165 (1824). *See also Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978); *Logan v. United States*, 144 U.S. 263, 297–98, 12 S.Ct. 617, 627–28, 36 L.Ed. 429 (1892). In *Perez*, the Supreme Court explained that the Double Jeopardy Clause does not bar such retrial because a declaration of a mistrial, after a hung jury, is a "manifest necessity" to secure "the ends of public justice." *Perez*, 22 U.S. (9 Wheat.) at 579–80.

■ In light of this well established principle, the Supreme Court has determined that where there has been a mistrial because of a hung jury, the Double Jeopardy Clause does not bar retrial—regardless of any evidentiary insufficiency at the first trial. *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). In *Richardson*, the Court explained that unlike an appellate reversal on insufficiency grounds, a mistrial because of a hung jury is not an "event" that terminates the original jeopardy to which the defendant was subject. Therefore, following such a mistrial, even if an appellate court could determine that the prosecution's evidence was insufficient to support a conviction, a defendant nonetheless has no valid double jeopardy claim:

> Since jeopardy attached here when the jury was sworn, petitioner's argument necessarily assumes that the judicial declaration of a mistrial was an event which terminated jeopardy in his case and which allowed him to assert a valid claim of double jeopardy.... [W]e hold ... that the failure of the jury to reach a verdict is not an event which terminates jeopardy.
>
> \*   \*   \*   \*   \*   \*
>
> The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree. *Regardless of the sufficiency of the evidence at petitioner's first trial,* he has no valid double jeopardy claim to prevent his retrial.

*Id.* at 325–26, 104 S.Ct. at 3086–87 (citations omitted) (emphasis added). Thus, "[w]here ... there has been only a mistrial resulting from a hung jury, *Burks* simply does not require that an appellate court rule on the sufficiency of the evidence...." *Id.* at 323, 104 S.Ct. at 3085. Indeed, as the Court stated, "[i]t follows logically from our holding today that claims of double jeopardy such as petitioner's are no

longer 'colorable' double jeopardy claims which may be appealed before final judgment." *Id.* at 326 n. 6, 104 S.Ct. at 3086 n. 6.

Testa and Senter argue, however, that the present case should be distinguished from *Richardson.* They claim that while in *Richardson* no "event" had occurred to terminate the original jeopardy, in the present case such an "event" did occur—namely, the finding by this Court, in *Gaggi,* that the evidence at trial was insufficient to convict defendant Ustica on the § 241 count. In essence, Testa and Senter claim that although a mistrial was declared as to them on the § 241 count, this Court's holding on the insufficiency of the evidence as to a convicted co-defendant—namely Ustica—should be applied to them to bar retrial.

*Richardson* makes clear, however, that "[r]egardless of the sufficiency of the evidence at [the] first trial, [a defendant] has no valid double jeopardy claim to prevent his retrial [following a mistrial for a hung jury]," *Richardson,* 468 U.S. at 326, 104 S.Ct. at 3086. Testa and Senter are correct that in *Richardson,* no appellate court ever actually passed on the sufficiency of any evidence at the first trial. Nor did *Richardson* address the unique circumstances of this case, where a co-defendant had his conviction reversed on grounds that evidence, which was used against all defendants at the first trial, was insufficient to prove the crime with which all the defendants were charged. But in *Richardson,* no appellate court ruled on the sufficiency of the evidence precisely because even if the evidence were to have been insufficient at the first trial, retrial would not have been barred by the Double Jeopardy Clause. Thus, we find nothing in *Richardson* to bar the retrial of Testa and Senter on the § 241 count.

■ Testa and Senter also argue that the doctrine of collateral estoppel bars relitigation of the issue of citizenship at their second trial. Defendants correctly point out that the doctrine of collateral estoppel applies to criminal prosecutions and may preclude the relitigation of an issue decided by a valid final judgment. *See Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *United States v. Mespoulede,* 597 F.2d 329, 332 (2d Cir. 1979). However, in *Standefer v. United States,* 447 U.S. 10, 21–25, 100 S.Ct. 1999, 2006–09, 64 L.Ed.2d 689 (1980), the Supreme Court unanimously held that, as a general matter, nonmutual collateral estoppel[14] does not apply in criminal cases. We see no reason to apply the doctrine in this case. In light of the Supreme Court's rationale in *Richardson,* it would be inappropriate to hold that the Double Jeopardy Clause requires a nonmutual ruling on insufficient evidence to estop retrial following a hung jury. This would undermine the conclusion in *Richardson* that such retrial is not precluded regardless of any insufficiency of the evidence at the first trial. We note that Testa and Senter make no claim that either the government or the trial court encouraged a mistrial for the purpose of allowing Testa and Senter to be tried again.

It may appear incongruous that Testa and Senter can be retried on the § 241 count following a hung jury, while Ustica cannot be retried following conviction—and subsequent reversal—on that count. But "[w]hat may seem superficially to be a disparity in the rules governing a defendant's liability to be tried again is explainable by reference to the underlying purposes of the Double Jeopardy Clause." *Scott,* 437 U.S. at 91, 98 S.Ct. at 2194. Indeed, the Supreme Court reached its conclusion in *Richardson* despite the dissent's observation that "a defendant who is constitutionally entitled to an acquittal but who fails to receive one—because he happens to be tried before an irrational or lawless factfinder or because his jury cannot agree on a verdict—is worse off than a defendant tried before a factfinder who demands con-

---

14. Nonmutual collateral estoppel refers to the situation in which one party is barred from relitigating an issue decided in a previous proceeding, where the parties were not the same in the prior proceeding. In the instant case, collateral estoppel is nonmutual as to Testa and Senter because, although they were at the same trial, they were not parties to Ustica's appeal.

stitutionally sufficient evidence. Indeed, he is worse off than a guilty defendant who is acquitted due to mistakes of fact or law." *Richardson*, 468 U.S. at 327, 104 S.Ct. at 3087 (Brennan, J., dissenting in part) (emphasis deleted). Again we note, as we did above, that "[t]here are no 'equities' to be balanced" here, because the Double Jeopardy Clause "has declared a constitutional policy, based on grounds which are not open to judicial examination." *Burks*, 437 U.S. at 11 n. 6, 98 S.Ct. at 2147 n. 6.

## CONCLUSION

The order of the district court is therefore reversed as to defendant Ustica, and Count Four of the indictment dated October 4, 1984, charging violations of 18 U.S.C. § 241, is dismissed with respect to defendant Ustica. The order of the district court is affirmed as to defendants Testa and Senter.