UNITED STATES of America, Appellee,

v.

Giuseppe GAMBINO, a/k/a "Joe," and Matteo Romano, Defendants–Appellants.

Nos. 1344, 1345, Dockets 90–1104, 90–1106.

United States Court of Appeals, Second Circuit.

Submitted after Remand May 28, 1992.

Decided June 26, 1992.

John L. Pollok (Hoffman & Pollok, New York City, of counsel), for defendant-appellant Giuseppe Gambino.

Gerlad L. Shargel, New York City (Gail E. Laser, of counsel), for defendant-appellant Matteo Romano.

Andrew C. McCarthy, Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., Annmarie Levins and Helen Gredd, Asst. U.S. Attys., S.D.N.Y., of counsel), for appellee.

Before: ALTIMARI and MAHONEY, Circuit Judges, and POLLACK, Senior District Judge.*

ALTIMARI, Circuit Judge:

This case is before us on remand from the United States Supreme Court. *See United States v. Gambino*, —— U.S. ——, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992). It originally came to us on appeal from a judgment of the United States District Court for the Southern District of New York (Leisure, *J.*), which denied defendants' motions to dismiss an indictment for a successive conspiracy prosecution on double jeopardy grounds. *See United States v. Gambino*, 729 F.Supp. 954 (S.D.N.Y. 1990). Applying the double jeopardy principles of *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), we affirmed in part and reversed in part the district court's decision, and remanded the matter. *See United States v. Gambino*, 920 F.2d 1108 (2d Cir.1990). In light of *United States v. Felix*, —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), the Supreme Court vacated our decision and remanded the case for further consideration. On remand, we again address the application of double jeopardy principles to successive conspiracy prosecutions. We now affirm the judgment of the district court in its entirety.

## BACKGROUND

Although the facts are set forth fully in our prior opinion, we restate the essential facts and recount the procedural history for clarity. In 1981, defendant-appellant Giuseppe Gambino was acquitted by a jury of charges that, between August 1, 1979 and March 18, 1980, he conspired to import heroin from Italy into the United States. *United States v. Gambino*, 80 Cr. 131 (E.D.N.Y.) (Neaher, *J.*) ("1981 trial"). At trial, the government focused on a fifteen-day period during which Gambino and his co-conspirators planned an unsuccessful trip overseas to obtain narcotics for import. In 1989, defendant-appellant Matteo Romano was acquitted by a jury of charges that, between January 1, 1985 and June 30, 1988, he conspired to import cocaine and heroin from Italy into the United States. *United States v. Adamita*, SSS 88 Cr. 217 (S.D.N.Y.) (Sprizzo, *J.*).

In a sixth superceding indictment returned on December 14, 1989 by the Grand Jury sitting in the Southern District of

---

* The Honorable Milton Pollack, United States District Court for the Southern District of New York, sitting by designation.

New York, fifteen defendants, including Gambino and Romano, were charged in multiple counts. Count One charged that between January 1, 1975 and the date the indictment was filed, the defendants participated in a conspiracy to import cocaine and heroin into the United States in violation of 21 U.S.C. § 963 (1988). Count One lists 172 overt acts, forty-one of which name Gambino. Of these forty-one overt acts, two relate to Gambino's participation in the heroin importation scheme underlying the 1981 trial and were part of the evidence introduced at that trial. In a seventh superceding indictment, the government alleged eleven additional overt acts naming Gambino.

Count Two charges the defendants with conspiracy to distribute or possess with the intent to distribute cocaine and heroin, in violation of 21 U.S.C. § 846 (1988).[1] Count One's overt acts are incorporated into Count Two.

Count Three, which incorporates the violations alleged in Counts One and Two, charges Gambino with organizing and supervising a continuing criminal enterprise ("CCE") from January 1, 1975 until the date of the indictment, in violation of 21 U.S.C. §§ 848(a) & (b) (1988). Finally, Count Seven charges Gambino, Romano, and their co-defendants with conspiring to conduct a racketeering enterprise, in violation of RICO, 18 U.S.C. § 1962(d) (1988). This count alleges a pattern of racketeering activity consisting of forty-two predicate acts occurring between January 1, 1970 and the date of the indictment, including narcotics transactions, bribery, extortion, gambling, murder, and obstruction of justice.

In September 1989, Gambino and Romano moved to dismiss various counts of the sixth superceding indictment claiming that prosecution on those counts would violate the Double Jeopardy Clause of the Fifth Amendment. Among other things, Gambi-

no argued that: (1) the overt acts alleged in the Count One importation conspiracy, and incorporated into the Count Two distribution conspiracy, reflect conduct for which he was already prosecuted in the 1981 trial; and (2) the Count Three CCE charge is a lesser included offense of Counts One and Two and should be dismissed. Similarly, Romano contended that his prosecution for Counts One, Two, and Seven was barred by principles of double jeopardy as a result of his acquittal in *Adamita*.[2]

In a well-reasoned opinion, the district court rejected defendants' double jeopardy challenges. *See United States v. Gambino*, 729 F.Supp. 954 (S.D.N.Y.1990). With regard to Counts One and Two, the district court applied the principle that successive prosecutions, including conspiracy prosecutions, are barred by the Double Jeopardy Clause only if "the offenses charged [are] in fact and law the same." *United States v. Armedo–Sarmiento*, 545 F.2d 785, 792 (2d Cir.1976), *cert. denied*, 430 U.S. 917, 97 S.Ct. 1330, 1331, 51 L.Ed.2d 595 (1977). In determining that the conspiracy underlying Gambino's 1981 trial and those charged in Counts One and Two were not the "same offense," *i.e.*, not the same conspiracy, the district court analyzed the conspiracies using the factors set forth by this court in *United States v. Korfant*, 771 F.2d 660 (2d Cir.1985) (per curiam). The *Korfant* factors include:

(1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where the common overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

*Korfant*, 771 F.2d at 662.

Although the district court noted some similarities between the conspiracies, in-

---

1. Although the indictment originally named both Gambino and Romano in Counts One and Two, the government determined during the pendency of the original appeal not to prosecute Romano under these counts. Accordingly, we granted the government's motion to remand the counts so that a *nolle prosequi* could be filed as to Romano.

2. Romano's challenge to prosecution under Counts One and Two was rendered moot as a result of the government's decision to file a *nolle prosequi* on these counts.

cluding the fact that two of the overt acts charged in the 1989 indictment were part of the evidence at the 1981 trial, the court determined that under the "totality of the circumstances," *see Korfant,* 771 F.2d at 662, the conspiracies were distinct. *See Gambino,* 729 F.Supp. at 959–60, 962. Specifically, the district court found that the conspiracies were distinct because the 1981 trial involved only an eight-month conspiracy while the 1989 prosecution involved a fourteen-year conspiracy, the drugs involved were not identical, the schemes involved in the conspiracies were different, and the personnel were different. *Id.* at 959. Since Gambino's challenge to Count Three, the CCE count, rested on his attack on Counts One and Two, the district court rejected that challenge as well. Finally, the court rejected Romano's challenge to Count Seven, the RICO count, finding that it alleged significant criminal conduct not prosecuted in *Adamita.*

On appeal, we affirmed in part and reversed in part the district court's judgment, and remanded the case. Based on *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which was decided after the appeal was argued in this case, and on this court's interpretation of *Grady* in *United States v. Calderone,* 917 F.2d 717 (2d Cir.1990), *cert. granted, vacated,* and *remanded,* —— U.S. ——, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992) (remanding case for further consideration in light of *Felix* ) we reversed the district court's determination that prosecution under Counts One and Two was not barred by double jeopardy. *See Gambino,* 920 F.2d at 1112.

Under *Grady,* "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 495 U.S. at 521, 110 S.Ct. at 2093. By a divided vote, *Calderone* construed *Grady* to bar a prosecution for a narrow, single drug conspiracy where the defendant had already been acquitted of participating in a broader, multi-drug conspiracy. 917 F.2d at 721–22. Relying on *Calderone,* we stated that

the "same conduct" test applied "equally to successive prosecutions in 'single transaction' cases, such as *Grady* itself, and [to] conspiracy cases." *Gambino,* 920 F.2d at 1112 (citing *Calderone,* 917 F.2d at 721.) We then reasoned that "the 'conduct that constitutes an offense' in a conspiracy prosecution" is not the conspiratorial agreement itself, but "that conduct from which the jury may infer the existence of an agreement." *Gambino,* 920 F.2d at 1112 (quoting *Calderone,* 917 F.2d at 721). Observing that *Calderone* "concluded that [u]nder *Grady,* this conduct may not be prosecuted a second time in order to establish an 'agreement' that differs from the first crime only in that the indictment happens to describe it differently," *id.,* we concluded that the *Korfant* analysis was inadequate to satisfy *Grady* 's double jeopardy inquiry.

Accordingly, we reversed the district court's decision regarding Counts One and Two "[b]ecause these counts rest, at least partially, on overt acts for which Gambino has been previously prosecuted." *Gambino,* 920 F.2d at 1112.

We affirmed, however, the district court's determination that prosecution under Counts Three and Seven, the CCE and RICO counts, respectively, was not barred by double jeopardy. *Id.* at 1112–14. In so doing, we relied on pre-*Grady* precedent holding that a CCE or RICO prosecution based on previously prosecuted conduct does not run afoul of the Double Jeopardy Clause, at least in cases involving predicate acts occurring after the initial prosecution. *Id.* at 1112–13 (citing cases). Significantly, relying on *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), we determined that *Grady* did not alter this precedent because the "double jeopardy principles developed in the 'classically simple situation presented in' single transaction cases [cannot] be readily transposed to the 'multilayered conduct, both as to time and to place involved' in CCE and RICO cases." *Gambino,* 920 F.2d at 1113 (quoting *Garrett,* 471 U.S. at 789, 105 S.Ct. at 2416).

All parties then filed petitions for certiorari in the Supreme Court. The Court denied defendants' petition. *See United States v. Gambino,* —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991). The Supreme Court thereafter decided *United States v. Felix,* —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). In light of *Felix,* and its discussion of *Grady*'s "same conduct" test, the Court granted the government's petition, vacated our prior decision, and remanded for further consideration. *See United States v. Gambino,* —— U.S. ——, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992).

## DISCUSSION

In *Felix,* the Supreme Court applied *Grady*'s "same conduct" test in the context of a federal prosecution in Oklahoma for substantive charges and a conspiracy involving the manufacture and distribution of methamphetamine that followed a federal prosecution of the defendant in Missouri for attempting to manufacture methamphetamine. At Felix's Missouri trial, in order to establish Felix's criminal intent, the government introduced evidence that Felix had manufactured methamphetamine in Oklahoma. In the subsequent Oklahoma indictment, Felix was charged with conspiracy to manufacture, possess, and distribute methamphetamine, and with related substantive charges. Two of the nine overt acts listed in furtherance of the conspiracy involved conduct that had been the subject of the Missouri case. *See* 112 S.Ct. at 1380.

The Supreme Court rejected Felix's claim that principles of double jeopardy, as set forth in *Grady,* barred the Oklahoma prosecution. With regard to the Oklahoma substantive offenses, the Court reasoned that although the government introduced evidence of Felix's Oklahoma conduct in the Missouri trial to prove intent, *see* Fed. R.Evid. 404(b), it did not *prosecute* Felix for that conduct, but only for the attempt offense with which he was charged. *Id.* at 1382–83. Accordingly, double jeopardy did not preclude Felix's subsequent prosecution for the substantive offenses committed in Oklahoma. With regard to the conspir-

acy charge, the Court held that although Felix had been prosecuted in Missouri for conduct that formed the basis for certain overt acts in the subsequent Oklahoma case, *Grady* was no bar. *Id.* at 1383–85. The Court reasoned that *Grady* did not displace the well-settled rule "that a substantive crime, and a conspiracy to commit that crime, are not the 'same offense' for double jeopardy purposes." *Felix,* 112 S.Ct. at 1384.

The precise holdings of *Felix* do not control the instant case because, unlike *Felix,* this case involves successive conspiracy prosecutions. The Supreme Court's discussion of *Grady* is, however, significant in guiding our determination of *Grady*'s application in this case.

■■■ The Double Jeopardy Clause of the Fifth Amendment bars prosecuting a person twice for the "same offence." This proscription is incorporated into the *Grady* test. As discussed above, under *Grady,* the Double Jeopardy Clause bars a prosecution where the government, "to establish an essential element of an offense charged in that prosecution, will prove *conduct that constitutes an offense for which the defendant has already been prosecuted.*" 495 U.S. at 521, 110 S.Ct. at 2093 (emphasis added). As the Court stated in *Felix,* "the 'essence' of a conspiracy offense 'is in the *agreement* or confederation to commit a crime.'" 112 S.Ct. at 1384 (citation omitted) (emphasis added). Thus, in the case of successive conspiracy prosecutions, the "conduct" constituting the prior "offense" is the first conspiratorial agreement itself, not the overt acts underlying that conspiracy. *See Felix,* 112 S.Ct. at 1381–82 n. 2.

■■ The relevant inquiry for double jeopardy purposes in the context of successive conspiracy prosecutions therefore is simply whether the second prosecution is for a conspiracy distinct from that previously prosecuted. If the second prosecution is for a distinct conspiracy, there is no double jeopardy problem regardless of an overt act or other evidentiary overlap. *See United States v. Persico,* 964 F.2d 172, 179 (2d Cir.1992) (successive RICO prosecutions).

To determine whether double jeopardy barred a successive conspiracy prosecution prior to *Grady*, this Circuit applied the multi-factor analysis set forth in *Korfant*, 771 F.2d at 662. *See, e.g., United States v. Reiter*, 848 F.2d 336 (2d Cir.1988). As discussed above, the district court applied the *Korfant* factors in this case and found the conspiracies distinct. However, reading *Grady* broadly and believing that *Grady*'s "same conduct" test applied with equal force to single transaction cases, such as *Grady* itself, and to successive conspiracy prosecutions, we concluded that the *Korfant* analysis was inadequate to satisfy double jeopardy concerns after *Grady*. In light of *Felix*, this conclusion was unwarranted.

The Court in *Felix* declined to read *Grady* "literally" or "expansively." *See Felix*, 112 S.Ct. at 1383–84; *see also Sharpton v. Turner*, 964 F.2d 1284 (2d Cir.1992). More importantly, *Felix* extended to conspiracy prosecutions the rationale of *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985)—which we adopted in our prior opinion in the context of CCE and RICO prosecutions, *Gambino*, 920 F.2d at 1113—that there was no "ready transposition of the 'lesser included offense' principles of double jeopardy from the classically simple situation presented in" single transaction crimes to offenses involving "multilayered conduct, both as to time and to place." *Felix*, 112 S.Ct. at 1385 (quoting *Garrett*, 471 U.S. at 789, 105 S.Ct. at 2416). In particular, although *Garrett* was concerned with CCE prosecutions, *Felix* observed that "the great majority of conspiracy prosecutions involve similar allegations of multilayered conduct as to time and place" and that "[r]eliance on the lesser included offense analysis, however useful in the context of a 'single course of conduct,' is therefore much less helpful in analyzing subsequent conspiracy prosecutions that are supported by previously prosecuted overt acts." 112 S.Ct. at 1385.

■ Under these circumstances, we conclude that *Grady*'s "same conduct" test did not supplant our *Korfant* multi-factor analysis for determining whether succes-sive conspiracy prosecutions run afoul of double jeopardy. Thus, based on Judge Leisure's thorough application of the *Korfant* factors and his finding that the conspiracies charged in Counts One and Two are distinct from the conspiracy charged at Gambino's 1981 trial, *see* 729 F.Supp. at 959–60, 962, we now hold that prosecution of Gambino for Counts One and Two is not barred by double jeopardy. To the extent our prior opinion held otherwise, it is now vacated. Furthermore, based on *Felix*'s affirmation of *Garrett*, we adhere to our prior decision in all other respects for the reasons stated therein.

## CONCLUSION

Based on the foregoing, the judgment of the district court is affirmed in its entirety.