UNITED STATES of America, Appellee,

v.

Mario ALEGRIA; Victor Pena;
Rafael Mercedes; George
Espinal, Defendants,

Alan Raphael, Defendant–Appellant.

No. 1835, Docket 92–1157.

United States Court of Appeals,
Second Circuit.

Argued Aug. 13, 1992.

Decided Nov. 19, 1992.

John R. Wing, New York City (Harris J. Yale, Weil, Gotshal & Manges, of counsel), for defendant-appellant.

Randall W. Bodner, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Andrew C. McCarthy, Asst. U.S. Atty.), for appellee.

Before: WINTER and MINER, Circuit Judges.*

MINER, Circuit Judge:

Defendant-appellant Alan Raphael appeals from an order entered on March 5, 1992 in the United States District Court for the Southern District of New York (Sweet, J.) denying his motion to dismiss, on double jeopardy grounds, the second superseding indictment naming him as a defendant in this case. 786 F.Supp. 355. The indictment charges Raphael with two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of mail fraud, in violation of 18 U.S.C. § 1341. These charges are based on the fraudulent reporting of the theft of an automobile to obtain financial benefits and were recast from an earlier indictment charging mail and wire fraud in order to eliminate certain allegations relating to the alteration of a vehicle identification number ("VIN"). The earlier indictment (the first superseding indictment) had included separate counts charging Raphael with the substantive offenses of VIN alteration and possession of a vehicle with an altered VIN. The VIN counts were dismissed by the district court prior to the submission of the case to the jury. The mail and wire counts in the first superseding indictment were submitted to the jury, and a verdict of

_____

* The Honorable Joseph M. McLaughlin recused himself from this case prior to oral argument.

guilty was rendered. However, the district court set aside those convictions and ordered a new trial.

In rejecting Raphael's double jeopardy claim, the district court observed that "[t]he last trial ended in ... an order for a new trial on the three fraud counts, at Raphael's behest," and for that reason determined that "the upcoming trial is just another stage in this prosecution." Analyzing the present indictment, the district court concluded that "[t]he superseding indictment on the fraud charges, although styled differently, does not subject Raphael to double jeopardy." For the reasons that follow, we agree with the district court that there is no double jeopardy bar to the prosecution of Raphael on the recast indictment.

## BACKGROUND

In August 1989, Raphael sought the assistance of Mario Sena to arrange for the disappearance of his 1987 Jaguar automobile in order to avoid the remaining lease payments due on the vehicle. When Raphael expressed some concern about the possibility that the Jaguar would be found and identified, Sena assured him that the Jaguar's VIN would be altered and that the car never would be traced. Sena sought the assistance of Mario Alegria.

Mario Alegria, aided and abetted by Victor Pena, operated a stolen car ring involving the alteration of VINs in automobiles received from car thieves. This nefarious business was conducted at garages in the Bronx and upper Manhattan, one of which was partially leased to a man named Mercedes. An FBI raid on Mercedes' garage space resulted in the recovery of a number of stolen vehicles, some with altered VIN numbers. Raphael had passed his Jaguar to Sena, who had passed it on to Alegria, who apparently altered the VIN. The car was observed in Mercedes' garage space on September 1, 1989 by an FBI agent and purportedly was seen by an informant the next day. According to the informant, the car was on its way to Florida. The government contends that Raphael refrained from reporting the Jaguar as stolen for two weeks in order to allow Alegria time to alter the VIN and dispose of the car. Raphael has maintained that in late August 1989 he took the Jaguar to Pound Ridge, New York, where it remained during the weekend the government said it was at the Manhattan garage.

It seems clear that Raphael reported to his insurance agent and to Aetna Casualty and Surety Company, his insurer, that the car had been stolen. Raphael caused three communications to be made to the insurance company in connection with his theft claim: a telecopy, a telephone communication and a mailing of a "Statement of Vehicle Theft" form. The first two communications formed the basis for the wire fraud charges and the third communication formed the basis for the mail fraud charge.

Raphael was named in six of the twenty counts contained in the superseding indictment. In Count One, he was charged with conspiracy involving the theft, transportation and resale of certain designated automobiles and the illegal alteration of VINs, in violation of 18 U.S.C. § 371. Named as co-conspirators along with Raphael were Alegria, Pena, Mercedes and one Espinal, who apparently brought a stolen BMW convertible to the Bronx garage for VIN alteration and thereafter sold it. In Count Four, Raphael was charged with alteration of a VIN, in violation of 18 U.S.C. §§ 511 and 2, and in Count Ten, he was charged with trafficking in motor vehicles with knowledge of the alteration of their VINs, in violation of 18 U.S.C. §§ 2321 and 2. Count Sixteen, the mail fraud count, was set out in the superseding indictment as follows:

> On or about September 26, 1989, in the Southern District of New York, the defendant ALAN RAPHAEL, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses and representations, to wit, to remove tamper with and alter the identification number of a vehicle that was not stolen, but was fraudulently reported as having been stolen in order to obtain insurance benefits, unlawfully, wilfully

and knowingly, and for the purpose of executing the scheme and artifice to defraud, did cause matter and things to be delivered by mail according to the direction thereon, namely, an envelope addressed to the Aetna Casualty & Surety Company containing a Statement of Vehicle Theft form.

(Title 18, United States Code, Section 1341.)

Counts Seventeen and Eighteen, the wire fraud counts, were set forth as follows:

On or about September the dates set forth below, in the Southern District of New York and elsewhere, the defendant ALAN RAPHAEL, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses and representations, to wit, to remove, tamper with and alter the identification number of a vehicle that was not stolen, but was fraudulently reported as having been stolen in order to obtain insurance benefits, unlawfully, wilfully and knowingly, and for the purpose of executing such scheme and artifice to defraud, did transmit and caused to be transmitted by means of wire communication in interstate commerce writings, signals and sounds, as set forth below:

| COUNT | WIRE COMMUNICATION | DATE |
| --- | --- | --- |
| 17 | Telecopy from Levitt–Fuirst Insurance, Scarsdale, New York to Aetna Casualty and Surety Company, Bridgeport, Connecticut | September 6, 1989 |
| 18 | Telephone conversation between ALAN RAPHAEL, New York, New York and Aetna Casualty and Surety Company, Bridgeport, Connecticut | September 7, 1989 |

(Title 18, United States Code, Section 1343.)

---

Alegria, Mercedes and Pena having pleaded guilty to the superseding indictment, the trial proceeded against Raphael and Espinal. At the close of the evidence but before submission of the case to the jury, the district court granted Raphael's motion to dismiss Counts Four and Ten, the VIN alteration counts. The district court found that the government had failed to prove that the VIN numbers altered on the Jaguar were identification numbers of the kind referred to in 18 U.S.C. §§ 511 and 2321. The jury rendered guilty verdicts against Raphael on the remaining counts. Following the verdicts, the district court granted Raphael's motion for acquittal on Count One, concluding that the evidence did not support Raphael's membership in the stolen car conspiracy. Raphael's motion for acquittal on the mail and wire fraud counts was denied, the district court having found that there was sufficient evidence to sustain the jury's verdicts on these counts.

The district court did, however, vacate the verdicts and order a new trial on the three fraud counts. The basis for this ruling was the court's determination that the government had withheld improperly, until rebuttal summation, an attack on Raphael's alibi witnesses. Because the government did not make its argument on the main summation and waited until rebuttal, the district court found that "Raphael was denied an opportunity to respond to the new arguments" and concluded that this "probably had a substantial effect upon the jury's determination." Also, the district court held that Raphael's defense on the fraud charges was hampered by the failure of the government to satisfy fully Raphael's request for a bill of particulars specifying the date the Jaguar was stolen.

Rather than proceed with the retrial on the fraud charges as set out in the superseding indictment, the government prevailed upon a grand jury to recast those charges in a second superseding indictment as follows:

## COUNTS ONE AND TWO

The Grand Jury charges:

1. On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendant ALAN RAPHAEL, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses and representations, to wit, having fraudulently reported that a black 1987 Jaguar XJ6 had been stolen from its owner, in order to cause an insurance company to make a payment because of the supposed "theft" of the car and to obtain financial benefits from the disappearance of the car, when in fact, ALAN RAPHAEL had secretly arranged for other persons to take the car and help him make it falsely appear to have been stolen, unlawfully, wilfully and knowingly, and for the purpose of executing such scheme and artifice to defraud, did transmit and caused to be transmitted by means of wire communication in interstate commerce, writings, signals and sounds, as set forth below:

| COUNT | WIRE COMMUNICATION | APPROXIMATE DATE |
|---|---|---|
| 1 | Telecopy from Levitt–Fuirst Insurance, Scarsdale, New York to Aetna Casualty and Surety Company, Bridgeport, Connecticut | September 6, 1989 |
| 2 | Telephone conversation between ALAN RAPHAEL, New York, New York and Aetna Casualty and Surety Company, Bridgeport, Connecticut | September 7, 1989 |

(Title 18, United States Code, Sections 1343 and 2.)

---

## COUNT THREE

The Grand Jury further charges:

1. On or about September 28, 1989, in the Southern District of New York, the defendant ALAN RAPHAEL, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses and representations, to wit, having fraudulently reported that a black 1987 Jaguar XJ6 had been stolen from its owner, in order to cause an insurance company to make a payment because of the supposed "theft" of the car and to obtain financial benefits from the disappearance of the car, when in fact, ALAN RAPHAEL had secretly arranged for other persons to take the car and help him make it falsely appear to have been stolen, unlawfully, wilfully and knowingly, and for the purpose of executing the scheme and artifice to defraud, did cause matter and things to be delivered by mail according to the direction thereon, namely, an envelope addressed to the Aetna Casualty & Surety Company, containing a "Statement of Vehicle Theft" form.

(Title 18, United States Code, Sections 1341 and 2.)

A comparison of the superseding indictment and the second superseding indictment reveals that the recast fraud counts: included "property" along with "money" as an object of the fraudulent scheme; added a specific description of the vehicle fraudulently reported as stolen; added an allegation that Raphael had arranged for others to take the car to help make it falsely appear to have been stolen; substituted "financial benefits" for "insurance benefits" as the advantage to be obtained; and eliminated VIN alteration as a factor in the insurance fraud.

In moving for dismissal based on double jeopardy, Raphael asserted that the second superseding indictment charges the same conduct that was subject of the conspiracy and VIN alteration charges included in the superseding indictment and dismissed on grounds of insufficient evidence. Raphael relies on the rule announced in *Grady v.*

*Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), prohibiting proof of conduct constituting an offense for which the defendant already has been prosecuted, to establish an element of the offense charged in the prosecution at bar. In denying the motion, the district court distinguished between cases where a defendant is re-indicted on charges based on the same conduct that formed the basis for charges upon which he was acquitted and cases such as this one, where a second trial is "just another stage" of the same prosecution.

## DISCUSSION

[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb....

U.S. Const. amend. V.

"It has long been settled ... that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S.Ct. 285, 289, 102 L.Ed.2d 265 (1988). There is one exception to this general rule: "when a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict, the Double Jeopardy Clause bars a retrial on the same charge." *Id.* at 39, 109 S.Ct. at 290; *see Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150-51, 57 L.Ed.2d 1 (1978).

■ The district court specifically determined that the evidence was sufficient to sustain the jury's verdict convicting Raphael on the two wire fraud counts and on the single mail fraud count. Thus, the exception to the general rule does not apply. It was the government's withholding of its attack on Raphael's alibi witnesses until the rebuttal summation and its failure to respond properly to Raphael's demand for a bill of particulars that prompted the district court to grant a new trial on the fraud counts. These non-evidentiary "error[s] in

the proceedings leading to conviction" bring this case within the general rule allowing a successive prosecution without violating the Double Jeopardy Clause.

■ Raphael relies heavily on *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). In *Grady*, the Supreme Court held "that the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant already has been prosecuted." *Id.* at 510, 110 S.Ct. at 2087. The Double Jeopardy Clause there barred a subsequent prosecution on vehicular homicide and assault charges where the State "admitted that it [would] prove the entirety of the conduct for which Corbin [previously] was convicted—driving while intoxicated and failing to keep right of the median—to establish essential elements of the homicide and assault offenses." *Id.* at 523, 110 S.Ct. at 2094. Because the conspiracy and VIN alteration charges made against him in the first superseding indictment were dismissed for insufficient evidence, Raphael argues that he already has been placed in jeopardy for the same conduct charged in the second superseding indictment. There are two flaws in his argument.

In the first place, the second superseding indictment makes no reference to a conspiracy or to unlawful VIN alterations. The present wire and mail fraud charges have as their gravamen a scheme involving the false reporting of an automobile theft in order to defraud an insurance company and gain financial benefits through the use of wire communications and mail. The VIN alteration allegations included in the wire and mail fraud charges in the first superseding indictment did not lie at the heart of those charges and were eliminated by the prosecutor from the present indictment in an excess of caution. No conspiracy allegations were included in the fraud counts of the prior indictment, and it is well settled in any event "that a substantive crime, and a conspiracy to commit that crime, are not the 'same offense' for double

jeopardy purposes," *United States v. Felix,* — U.S. ——, ——, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992); *see also United States v. Gambino,* 968 F.2d 227 (2d Cir. 1992). In all, no conduct constituting an offense subject of prior prosecution presently is charged against Raphael.

In the second place, even if the allegations of VIN alteration had remained in the fraud counts, they would not have constituted a bar to prosecution on those counts. This is so because proof of Raphael's conduct in regard to VIN alteration is not an essential element of the fraud charges. At best, the alteration would be relevant evidence, and the government is not prohibited from introducing in a later prosecution evidence introduced in an earlier prosecution. *Grady,* 495 U.S. at 521, 110 S.Ct. at 2093. The Double Jeopardy standard established in *Grady* "is not an 'actual evidence' or 'same evidence' test," *id.,* which would impose such a broad restriction. In order to prove the mail and wire fraud charges, it simply is not necessary to prove the conduct constituting the VIN alteration offenses, but evidence of the VIN alteration may be considered germane in limning the background of the offenses that are charged.

As noted previously, the recast indictment includes some innocuous changes: the automobile fraudulently reported as stolen is more particularly described; "financial benefits" is substituted for "insurance benefits" and "obtaining money" has become "obtaining money and property" to account for the fact that Raphael would benefit if the insurance proceeds were paid to the lessor of his vehicle; and an allegation is inserted regarding Raphael's arrangements with others to take the car and assist him in the fraudulent scheme to make it appear to have been stolen. All this does not detract from the proposition that Raphael is charged with the same mail and fraud offenses as were charged in the earlier indictment. The changes that have been made are changes in form, not substance. The next step to be taken is a trial on the recast charges.

We heretofore have held that in *Grady* the Supreme Court "did not purport to make its new standard applicable to separate charges within a single prosecution" and that it did not disturb the well-settled rule "that, so long as the evidence at the first trial was sufficient to support the conviction, retrial after a successful appeal is permissible." *Detrich v. United States,* 924 F.2d 479, 480 (2d Cir.1991) ("*Detrich III*"). The defendant in *Detrich* originally was charged with possession of heroin with intent to distribute it, conspiracy to possess heroin, and importation of heroin. At his first trial, Detrich was acquitted of the possession and conspiracy charges but was convicted on the importation count. We reversed the conviction because of the improper exclusion of evidence offered by the defendant and ordered a new trial. *See United States v. Detrich,* 865 F.2d 17 (2d Cir.1988) ("*Detrich I*"). Convicted after retrial, Detrich appealed on the contention that double jeopardy barred his prosecution in light of his acquittal on the possession and conspiracy counts. We rejected that contention and affirmed the conviction. *See United States v. Detrich,* 895 F.2d 1410 (2d Cir.1989) (mem.) ("*Detrich II*"). A post-conviction petition to vacate the conviction in light of *Grady* was rejected in *Detrich III,* a case we find to be on all fours with this one. That the *Detrich* case involved a reversal on appeal for reasons other than insufficient evidence and that the case at bar involves an order for a new trial by the district judge for reasons other than a lack of sufficient evidence is a distinction without a difference.

Raphael argues that precedent in this Court supports his position. However, the cases he cites are inapposite. In *United States v. Calderone,* 917 F.2d 717 (2d Cir. 1990), *vacated and remanded,* —— U.S. ——, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992) (in light of *United States v. Felix,* —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992)); *United States v. Gambino,* 920 F.2d 1108 (2d Cir.1990) (reversing in part judgment of conviction on grounds of double jeopardy), *cert. denied,* —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991), *vacated and remanded,* —— U.S. ——, 112 S.Ct. 1657, 118

L.Ed.2d 381 (1992) (in light of *Felix*, —— U.S. at ——, 112 S.Ct. 1377), *superseded on remand by*, 968 F.2d 227 (2d Cir.1992) (rejecting double jeopardy claim and affirming judgment of conviction in entirety); and *United States v. Russo*, 906 F.2d 77 (2d Cir.1990), final judgments were entered on all counts of the original indictments. No final judgment ever was entered against Raphael on the fraud charges lodged in the earlier indictment, and those charges remain pending. Judge Sweet therefore correctly determined that Raphael's "upcoming trial is just another stage in this prosecution." *United States v. Ustica*, 847 F.2d 42 (2d Cir.1988) provides no comfort to Raphael because there the reversal on appeal was based on the insufficiency of the evidence at trial.

## CONCLUSION

The order of the district court is affirmed for the foregoing reasons.