848 F.2d 336
 UNITED STATES of America, Appellee,
v.
Mark REITER, Angelo Ruggiero, Vito Loiacono, Raymond Clark
a/k/a "Romar," Leonard Rollack a/k/a "Petey," a/k/a "Peter
Rollack," a/k/a "Peter Ifill," Timothy Smith a/k/a
"Heartbeat," and Alfred Dicks, Defendants,
Mark Reiter, Defendant-Appellant.
 No. 1219, Docket 88-1125.
 United States Court of Appeals,
Second Circuit.
 Argued May 5, 1988.
Decided May 10, 1988.
Opinion June 3, 1988.
 
 Mark M. Baker, Slotnick & Baker, New York City (Barry Ivan Slotnick, Slotnick & Baker, New York City, of counsel), for defendant-appellant.
 Maria T. Galeno, Asst. U.S. Atty. (Rudolph W. Giuliani, U.S. Atty. for the S.D. of New York; Robert Hammel, Asst. U.S. Atty., Linda Imes, Asst. U.S. Atty., of counsel), for appellee.
 Before LUMBARD, OAKES, and KEARSE, Circuit Judges.
 OAKES, Circuit Judge:
 Mark Reiter appeals an order of the United States District Court for the Southern District of New York, Richard Owen, Judge, denying Reiter's motion to dismiss a predicate act contained in a substantive racketeering charge and referred to in a conspiracy charge on the ground that prosecution was barred by the Double Jeopardy clause of the United States Constitution. Reiter alleges that the same conspiracy was charged in a 1983 indictment in the Southern District of New York, which Judge Mary Johnson Lowe ultimately dismissed, and in a 1986 indictment which is the subject of an ongoing prosecution in the Eastern District of New York before Joseph M. McLaughlin, Judge. We disagree and accordingly affirm the order.[1]
 
 BACKGROUND
 
 1
 A. Reiter I. Over the past six years, Mark Reiter has been charged with criminal conduct in three separate indictments. The first, "Reiter I," charged him with one count of conspiracy to distribute heroin from January 1980 through April 28, 1983, in the Southern District of New York and elsewhere, in violation of 21 U.S.C. Sec. 846 (1982). United States v. Grant, 82 Cr. 727 (S.D.N.Y. filed Apr. 28, 1983). The indictment named Thelma Grant, Salvatore Corallo, and Elizabeth Grant as Reiter's coconspirators. Thelma Grant was named in all nine counts and charged with, among other things, conspiring with others to violate the federal narcotics laws and with engaging in a continuing criminal enterprise. Grant, a close friend of Leroy "Nicky" Barnes, was suspected of operating Barnes's massive heroin distribution business following his conviction on December 2, 1977. The Government contended that in the summer of 1980, Barnes arranged through Herbert Sperling, with whom he was incarcerated in Marion, Illinois, for Reiter and Corallo to supply heroin to Grant.
 
 
 2
 Grant pleaded guilty to all the counts in the indictment but denied in court that Reiter and Corallo were involved in the conspiracy. She testified that she had two sources for the drugs sold to the undercover agent. The prosecution contended, however, that Reiter supplied heroin for several sales to an undercover agent who, posing as a former customer of Barnes, asked to purchase heroin from Grant in March 1982. The evidence showed that Reiter met with Grant at a Manhattan restaurant on March 12, 1982, and that the next day Corallo delivered heroin to Grant for resale to the agent. On April 29, 1982, Grant told the undercover agent that her source was "a Jew" and "an Italian." After the Government presented its evidence against Reiter, the district court entered a judgment of acquittal as to Reiter pursuant to Fed.R.Crim.P. 29.
 
 
 3
 B. Reiter II. In 1982 the FBI conducted a large-scale investigation of the activities of Angelo Ruggiero and his associates. In an application for a wiretap of Ruggiero's home, FBI Special Agent Donald McCormick submitted an affidavit in which he stated:
 
 
 4
 CS-1 [confidential informant] stated that RUGGIERO and JOHN GOTTI, approximately a year ago pretended to expel Mark Reiter from their crime crew, because Reiter was continuing to handle and distribute narcotics in violation of a Gambino Family edict prohibiting the conduct of narcotics trafficking. Nonetheless, CS-1 stated that Reiter continues to deal in heroin and cocaine and is being funded by RUGGIERO [and others].
 
 
 5
 ....
 
 
 6
 CS-2 states that he has overheard a cryptic discussion between EUGENE GOTTI and another concerning the fact that Mark Reiter is still working for RUGGIERO. CS-2 advised that he heard members of the GOTTI-RUGGIERO crew state that Mark Reiter strictly handles narcotics for that crew.
 
 
 7
 The investigation resulted in a multicount indictment, "Reiter II," which charged Reiter and ten codefendants (Angelo Ruggiero, Gene Gotti, John Carneglia, Joseph Guagliano, Oscar Ansourian, Gerlando Sciascia, Edward Lino, William Robert Cestaro, Salvatore Greco, and Joseph LoPresti) and an unindicted coconspirator (Salvatore Ruggiero) with conspiring in violation of 21 U.S.C. Sec. 846 to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. Sec. 841(a)(1) (1982) in the Eastern District of New York and elsewhere from February to June 1982. The indictment also charged Reiter's codefendants with other narcotics offenses, racketeering, and obstruction of justice in violation of 18 U.S.C. Secs. 1510, 1952, 1962(c) (1982 & Supp. IV 1986), and 21 U.S.C. Secs. 841(a)(1), 843(b), 846 (1982).
 
 
 8
 In a post-indictment application to secure handwriting exemplars, the Assistant United States Attorney wrote:
 
 
 9
 The Government's theory at trial will be that the delivery of the heroin from ANGELO RUGGIERO to MARK REITER was effectuated by SALVATORE GRECO through a "pickup man" and close associate of MARK REITER, SALVATORE CORALLO who had previously delivered 1/8 kilogram of heroin for MARK REITER to Thelma Grant on March 13, 1982.
 
 
 10
 (Footnote omitted.)
 
 
 11
 Reiter filed a pretrial motion to dismiss the indictment on double jeopardy grounds. Judge Mark A. Costantino of the Eastern District of New York denied the motion, finding that the Government had put forth sufficient evidence to show by a preponderance of the evidence that the conspiracies alleged in Reiter I and Reiter II constituted separate conspiracies. United States v. Ruggiero, 83 Cr. 412 (E.D.N.Y. Sept. 9, 1986). This court affirmed by order. United States v. Reiter, 816 F.2d 670 (2d Cir.1987).
 
 
 12
 Trial commenced before Judge Costantino on June 1, 1987. On September 2, 1987, Ruggiero made a telephone call from the Metropolitan Correctional Center ("MCC") to Reiter at Reiter's home, advising him that their associate, James Jackson, had been removed from the MCC. On September 8, Reiter failed to appear for trial. Law enforcement officers located him over two months later near Los Angeles, California. At a hearing held to decide whether Reiter's flight from the Eastern District could be admitted as proof of consciousness of guilt, the Government, apparently referring to James Jackson, stated, "Mr. Reiter became aware of somebody who could provide evidence of his narcotic [sic ] dealings during the time frame of our indictment [Reiter II ] and that so-called live witness who counsel is constantly telling the Court does not exist, could tie Mr. Mark Reiter into the conspiracy and does exist." Judge Costantino did not give a consciousness of guilt charge, and the evidence concerning Jackson's move from the MCC was not admitted at trial.
 
 
 13
 After eight months of trial, Judge Costantino declared a mistrial on the grounds of jury tampering and an insufficient number of jurors. Reiter and nine of his codefendants moved for an order barring their retrial on double jeopardy grounds, claiming that there was no "manifest necessity" to declare a mistrial. Judge Joseph M. McLaughlin, who was assigned the case, denied the motion and this court affirmed. United States v. Ruggiero, 846 F.2d 117, 125 (2d Cir.1988).
 
 
 14
 Evidence at the aborted Reiter II trial included a recording of a June 13, 1982, conversation in which Ruggiero told Gotti that Reiter would receive a large quantity of heroin if he purchased it with cash. Also admitted was the recording of a conversation that took place five days later, in which Ruggiero and Gotti discussed the distribution to Reiter of a portion of eight kilograms of heroin Ruggiero had obtained:
 
 
 15
 ANGELO RUGGIERO: I'm trying to figure out. I'm all confused. I just picked up eight things. Picked up six off them guys. (UI) [unintelligible]. Give one to, I'm giving one to Zeke tonight, and one to Jew Boy.
 
 
 16
 GENE GOTTI: You got eight?
 
 
 17
 ANGELO RUGGIERO: (UI) one more, yeah.
 
 GENE GOTTI: (UI)
 
 18
 ANGELO RUGGIERO: (UI) took two off Eddie (UI). Uh, Jew Boy ordered one, cause (UI).
 
 
 19
 On June 23, 1982, Federal Bureau of Investigation ("FBI") agents arrested codefendants William Cestaro and Salvatore Greco after observing Cestaro give Greco $149,680 in return for four bags of heroin. FBI agents searching Greco found a business card with a notation indicating the sale of the eight kilograms, including one kilogram to "M" and a card bearing Reiter's fingerprints and the notation "call/6 p.m. Sal 392-2585," which corresponded to Salvatore Corallo's telephone number.
 
 
 20
 C. Reiter III. On February 17, 1987, a grand jury in the Southern District of New York returned the first of a series of indictments charging several defendants with participating in a large scale narcotics operation led by James Jackson.[2] On February 23, 1988, the grand jury returned a twelfth superseding indictment which charged Reiter with participating in a racketeering enterprise in violation of 18 U.S.C. Secs. 1961, 1962(c) (1982 & Supp. IV 1986); with conspiring to violate the federal racketeering laws in violation of 18 U.S.C. Secs. 1961 and 1962(d) (1982 & Supp. IV 1986); with engaging in a continuing criminal enterprise in violation of 21 U.S.C. Sec. 848(a) (1982 & Supp. IV 1986); with knowingly distributing and possessing with intent to distribute heroin in violation of 21 U.S.C. Secs. 812, 841(a)(1), and 841(b)(1)(B) (1982 & Supp. IV 1986) and 18 U.S.C. Sec. 2 (1982); with knowingly using a telephone to commit a felony in violation of 21 U.S.C. Sec. 843(b) (1982); and with conspiring to evade income taxation in violation of 26 U.S.C. Sec. 7201 (1982) and 18 U.S.C. Sec. 371 (1982).
 
 
 21
 Count One alleges twenty-two acts of racketeering including "Act of Racketeering Nine" which alleges that as part of a pattern of racketeering, Reiter, Ruggiero, and their codefendants conspired to distribute and to possess with intent to distribute heroin from January 1, 1980, to October 31, 1987, in the Southern District of New York and elsewhere.[3] Count Two, which alleges that Reiter conspired with others to violate the federal racketeering laws, incorporates by reference the acts of racketeering set forth in Count One.
 
 
 22
 In a pretrial motion, Reiter contended inter alia that Act of Racketeering Nine should be dismissed on double jeopardy grounds because Reiter I and Reiter II charged the same conspiracy. Relying on United States v. Korfant, 771 F.2d 660, 662 (2d Cir.1985) (per curiam), Judge Richard Owen of the Southern District of New York denied the motion, concluding that Reiter I, Reiter II, and Reiter III charge separate and distinct conspiracies. This appeal ensued.
 
 DISCUSSION
 
 23
 To determine the merits of a double jeopardy claim regarding successive conspiracy prosecutions, the court must examine the totality of the circumstances by considering the following factors:
 
 
 24
 (1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.
 
 
 25
 Korfant, 771 F.2d at 662; cf. United States v. Russotti, 717 F.2d 27, 33 (2d Cir.1983) (similar factors determine whether Double Jeopardy clause bars successive RICO prosecutions), cert. denied, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984). The double jeopardy claim succeeds if the offenses charged appear in fact and in law the same. United States v. Nersesian, 824 F.2d 1294, 1319 (2d Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987). " '[O]nce a defendant introduces sufficient evidence that the two conspiracies alleged were in fact one, the burden shifts to the government to rebut the inference of unity.' " United States v. Abbamonte, 759 F.2d 1065, 1069 (2d Cir.1985) (quoting United States v. Papa, 533 F.2d 815, 821 (2d Cir.), cert. denied, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976)).
 
 
 26
 Applying the Korfant factors, we conclude that the Double Jeopardy clause does not bar prosecution on Act of Racketeering Nine. Turning first to Reiter I and Reiter III, we note that both indictments charge narcotics conspiracies in violation of 21 U.S.C. Sec. 846. However, the only overt act in Reiter I which named Reiter was a meeting between Reiter and Thelma Grant at a Manhattan cafe on March 12, 1982. In contrast, Reiter III charges that Reiter repeatedly distributed heroin from 1980 to 1987 in several states, with specific distributions taking place in the summer of 1986, November through December 1986, and June 1987. Reiter III also charged that Reiter participated in three homicides. Although the conspiracy charged in Reiter I and the conspiracy and pattern of racketeering charged in Reiter III overlap during the time frame of 1980-83, the Reiter III conspiracy continued for four years after the Grant conspiracy ended with Grant's guilty plea in 1983. Such time differences suggest that the offenses charged are not identical and that the later prosecution can withstand double jeopardy scrutiny. See United States v. Rivera, 844 F.2d 916, 923-24 (2d Cir.1988); United States v. Annabi, 771 F.2d 670, 672 (2d Cir.1985). Moreover, there is no time overlap as to Reiter's overt acts alleged in the indictments, the only overt act alleged in Reiter I having occurred on March 12, 1982, and the first overt act alleged in Reiter III having occurred in the summer of 1986. Cf. Russotti, 717 F.2d at 33 (no time overlap between predicate acts in two racketeering indictments though time overlap in operation of racketeering enterprises).
 
 
 27
 The participants of the two conspiracies also differ. Reiter's named coconspirators in Reiter I were Corallo, Thelma Grant, and Elizabeth Grant, while the Reiter III conspiracy involved all the members of the Jackson organization, a large narcotics distribution enterprise. The fact that Reiter used Corallo as an intermediary to both Grant and the Jackson organization does not establish the existence of a single conspiracy. See Korfant, 771 F.2d at 663. As for the final Korfant factor, there is no evidence that the Grant and Jackson conspiracies were mutually dependent. In fact, there is some indication that, at least in Harlem, where the Grant conspiracy operated, the Grant and Jackson conspiracies were competitors.
 
 
 28
 If Reiter I and Reiter III represent two conspiracies in which Ruggiero supplied Reiter who then, with Corallo's assistance, supplied Grant (Reiter I ) and the Jackson organization (Reiter III ), double jeopardy does not bar prosecution in Reiter III. Separate chains of conspiracy may emanate from the same leadership. Abbamonte, 759 F.2d at 1069 ("Though the defendant claiming double jeopardy was at the head of two distribution chains, their separateness was demonstrated by the identification in each conspiracy of different wholesalers linking the head of a distribution network to retailers at the bottom.") (construing Papa, 533 F.2d at 821). Indeed, in United States v. Sperling, 506 F.2d 1323, 1341 & n. 25 (2d Cir.1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975), this court urged the Government to bring separate actions rather than indict numerous defendants in one large conspiracy case where the criminal acts could be more reasonably regarded as two or more conspiracies, particularly where the ties among the members of each group were much stronger than the ties between the two organizations. The Government apparently followed this advice in the instant case.
 
 
 29
 The conjunction of Reiter II and Reiter III presents a closer question, but one we resolve in favor of the Government. We recognize that both indictments charge conspiracies which in part operated in 1982 and 1983 in Manhattan and in which Ruggiero, Reiter, and Corallo played the same roles: respectively, supplier, wholesaler, and intermediary to large scale wholesalers. Where the Government alleges that defendants conspired with others, and there is evidence that participants of one conspiracy are acquainted with personnel in the other, that the conspiracy cannot operate without a larger organization backing it up, and that dates and geographic areas overlap, the burden of proving separate conspiracies shifts to the prosecution, Abbamonte, 759 F.2d at 1069 (discussing United States v. Mallah, 503 F.2d 971, 986 (2d Cir.1974), cert. denied, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975)), a burden the Government facially sustains in this case. Reiter II charges overt acts in June of 1982 for the most part in Manhattan, while Reiter III involves heroin distribution by the Jackson organization on a regular basis from 1980 through 1987 in several states, with the overt acts confined to 1986 and 1987. In addition to the differences in time and geographic scope, Reiter II and Reiter III involved different participants. Of the sixteen defendants charged in Reiter II and seven defendants charged in Reiter III, only Reiter and Ruggiero are named in both indictments. In sum, although there is some identity of statutory offenses and some overlap in time, place, and participants, the similarities are outweighed by the differences in these factors and by the fact that the two indictments allege different overt acts. We conclude that Reiter II does not bar prosecution in Reiter III. See Korfant, 771 F.2d at 662; Papa, 533 F.2d at 820-22. Compare In re Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889) (prosecution on successive indictments barred where second prosecution does not require proof of additional significant facts); Jordan v. Commonwealth of Virginia, 653 F.2d 870, 872-73 (4th Cir.1980) (same); United States v. Sabella, 272 F.2d 206, 212 (2d Cir.1959) (same).
 
 
 30
 Order affirmed.
 
 
 
 [1]
 On May 10, 1988, we entered an order affirming Judge Owen's order and noted that an opinion would follow
 
 
 [2]
 The matter was originally captioned United States v. Jackson. The eleventh superseding indictment renamed the matter United States v. Reiter
 
 
 [3]
 Act of Racketeering Nine is set forth in Paragraph 17 of Count One as follows:
 
 
 [17]
 Act of Racketeering Nine
 It was a part of the pattern of racketeering activity that, from on or about January 1, 1980, up to and including October 31, 1987, in the Southern District of New York and elsewhere, MARK REITER, ANGELO RUGGIERO, VITO LOIACONO, RAYMOND CLARK, a/k/a "Romar," LEONARD ROLLACK, a/k/a "Petey," a/k/a "Peter Rollack," a/k/a "Peter Ifill," TIMOTHY SMITH, a/k/a "Heartbeat," and ALFRED DICKS, the defendants, and James Jackson, a/k/a "Jack," a/k/a "James Bentley Jackson," a/k/a "Steven Gates," Eugene Romero, a/k/a "Mike Mellon," a/k/a "Eugene Prince," a/k/a "Mellon," Anthony Osborne, a/k/a "Oz," Anthony Mackenzie, a/k/a "Mac," a/k/a "Anthony Curry," Jerome Harris, a/k/a "Bones," Joseph Rodney Stokes, a/k/a "Littleman," Joseph Sherman, Matthew Walton, Ted H. Key, a/k/a "Ted Harold Key," a/k/a "Teddy Keys," a/k/a "Dwayne Sykes," Marco Wyche, Warren Cooper, Sherman Flowers, a/k/a "Sherman Bent," Anthony Johnson a/k/a "Tony Johnson", [sic ] Russell Fleming, Cherie Brown, a/k/a "Cherie Sloan," Joseph Bethea, a/k/a "Bey," James Simmons, a/k/a "Boo," Jerry Davis, a/k/a "New York Jerry," and others known and unknown to the Grand Jury, unlawfully, intentionally and knowingly did conspire to distribute and to possess with intent to distribute a Schedule I narcotic drug controlled substance, to wit, quantities of heroin, in violation of Section 846 of Title 21, United States Code.