**UNITED STATES of America, Appellee,**

**v.**

**Claudio CALDERONE and Domenico Catalano, Defendants–Appellants.**

**Nos. 1200, 1289, Dockets 90–1122, 90–1123.**

United States Court of Appeals, Second Circuit.

Submitted July 16, 1992.

Decided Dec. 10, 1992.

Barry M. Fallick and Bobbi C. Sternheim, Rochman Platzer Fallick Rosmarin & Sternheim, New York City, submitted a letter brief, for defendants-appellants.

Otto G. Obermaier, U.S. Atty., Margaret S. Groban, Andrew C. McCarthy, Asst. U.S. Attys., New York City, submitted a letter brief, for appellee.

David L. Lewis, Lewis & Fiore, New York City, submitted letter briefs, for amicus curiae Giuseppe Fico.

Before: NEWMAN, PRATT, and MINER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This interlocutory appeal of an order denying a motion to dismiss an indictment on double jeopardy grounds primarily raises the issue whether acquittal of a far-reaching conspiracy precludes subsequent prosecution for a smaller conspiracy entirely contained within the larger conspiracy. The appeal arises in the aftermath of the Supreme Court's decisions in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and in *United States v. Felix*, — U.S. —, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), and our own recent decision in *United States v. Gambino*, 968 F.2d 227 (2d Cir.1992) (*"Gambino II"*). Claudio Calderone and Domenico Catalano appeal from the February 2, 1990, order of the District Court for the Southern District of New York (Robert J. Ward, Judge), denying their motion to dismiss conspiracy and substantive narcotics charges. We previously reversed that order and directed dismissal of the entire indictment. *See United States v. Calderone*, 917 F.2d 717 (2d Cir.1990) (*"Calderone I"*). The appeal is before us on remand from the Supreme Court for reconsideration in light of *Felix*. *See United States v. Calderone*, — U.S. —, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992). Upon reconsideration, we conclude that the Double Jeopardy Clause bars prosecution of the conspiracy count and the portion of the so-called telephone counts relating to the conspiracy, but does not bar prosecution of the portion of the telephone counts relating to substantive offenses nor prosecution of substantive possession counts. We therefore affirm in part, reverse in part, and remand.

## Background

The facts are set forth in *Calderone I*, and only a brief summary is required here. The prosecution that is alleged to create a double jeopardy bar was initiated by an indictment, which we will refer to as the *Adamita* indictment, returned June 30, 1988, against Calderone, Catalano, and twenty-six others. *See United States v. Adamita*, 701 F.Supp. 85 (S.D.N.Y.1988). The *Adamita* indictment charged all twenty-eight defendants with participation in an extensive conspiracy between January 1, 1985, and June 30, 1988. The conspiracy involved, among other things, the importation of kilograms of heroin from Europe into the United States and the distribution in the United States of kilograms of heroin and cocaine and tons of marijuana. Jury trial commenced against seventeen of the defendants, including Calderone and Catalano.

At the conclusion of the Government's case, Judge Sprizzo granted motions by Calderone and Catalano (and five other defendants) for judgments of acquittal on the ground of insufficiency of the evidence. The Judge indicated that the evidence might suffice to support a charge of a conspiracy of smaller scope than the one charged:

I am not saying your evidence would not have been sufficient to prove Mr. Calderone to be a member of a heroin conspira-

cy involving [two alleged co-conspirators], but you didn't charge a heroin conspiracy. You charged a … broadly based conspiracy that involved different types of drugs. There is no evidence in the record from which I can infer that as to Mr. Calderone.

*Calderone I,* 917 F.2d at 719.

The Government subsequently obtained a new indictment, containing charges against only Calderone and Catalano. The new indictment, which is the subject of the pending appeal, contains twenty-eight counts. Count One charges both defendants with participating in a conspiracy between January 1, 1987, and March 31, 1988, to distribute kilogram quantities of heroin in the New York metropolitan area, in violation of 21 U.S.C. § 846 (1988). Counts Two through Twenty–Five charge both defendants with the substantive offense of using a telephone to facilitate narcotics offenses, in violation of 21 U.S.C. § 843(b) (1988); the offenses alleged to be facilitated are both the conspiracy offense charged in Count One and the substantive offense of possessing heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1988). Counts Twenty–Six through Twenty–Eight charge both defendants with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1988).

On February 2, 1990, the District Court denied the defendants' motion to dismiss the indictment as barred by the Double Jeopardy Clause. Judge Ward indicated that he would have dismissed on jeopardy grounds if the defendants had been acquitted by the jury of the charges in the *Adamita* indictment, but would not do so as a result of Judge Sprizzo's ruling that the evidence was insufficient to support a jury verdict on the conspiracy charge in the prior indictment. Judge Ward also ruled that the conspiracy charged in Count One of the pending indictment was a different conspiracy from the conspiracy charged in the *Adamita* indictment.

On the prior appeal, a divided panel reversed, concluding that prosecution of all of the charges in the new indictment was barred by double jeopardy principles as enunciated by the Supreme Court in *Grady v. Corbin. See Calderone I,* 917 F.2d at 720–22. The Supreme Court subsequently shed new light on its double jeopardy jurisprudence in *United States v. Felix,* and thereafter vacated the judgment of this Court in *Calderone I* and remanded for further consideration in light of *Felix. See United States v. Calderone,* — U.S. at ——, 112 S.Ct. at 1657. We invited and have received supplemental papers from the parties.

## Discussion

■ *The conspiracy count.* At the outset, we reject the reasoning of the District Court to the extent that it relies on a distinction between a jury's acquittal and a trial judge's ruling that the evidence is insufficient to permit a case to reach a jury. If a previously prosecuted offense is the "same offense" as a subsequently prosecuted offense for purposes of the Double Jeopardy Clause, the second prosecution is barred whether acquittal in the prior prosecution resulted from a jury verdict or a trial judge's ruling as to insufficiency of the evidence. *See Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978). The primary issue on which this appeal turns, therefore, is whether the narrow conspiracy charged in Count One of the pending indictment is the "same offense" for double jeopardy purposes as the broad conspiracy charged in the *Adamita* indictment.

In resolving the "same offense" issue, we are bound to apply both the new teaching from the Supreme Court in *Felix,* to the extent pertinent to this case, and the recent precedent of our Court in *Gambino II.* The latter decision is especially relevant because it reconsidered, in light of *Felix,* a prior ruling, *United States v. Gambino,* 920 F.2d 1108 (2d Cir.1990) (*"Gambino I"*), which had held two defendants entitled to dismissal on jeopardy grounds of a pending conspiracy charge because of their acquittals on prior conspiracy charges.

*Felix* provides clear guidance with respect to two aspects of our pending case and is perplexing with respect to a third aspect. First, we learn from *Felix* that *Grady v. Corbin*, on which we relied on the prior appeal in *Calderone I*, is not to be understood as altering the rule that a *conspiracy* offense and a *substantive* offense are not the "same offense" for jeopardy purposes. *See Felix*, —— U.S. at —— ——, 112 S.Ct. at 1383–85. Second, we are instructed not to read *Grady* either "literally" or "expansively." *Id.* at ——, 112 S.Ct. at 1383–84. Third, when we consider how that instruction bears on the issue whether two *conspiracy* offenses are the "same offense" for jeopardy purposes, we derive little if any guidance since *Felix* did not involve that issue at all. Moreover, *Felix* explicitly noted what we had said about that issue in *Calderone I*, citing both to the majority and concurring opinions, *id.* at ——, 112 S.Ct. at 1385, but refrained from offering any view as to the correctness of what we had said, the Court preferring not to become "enmesh[ed] in such subtleties," *id.* Nevertheless, we were subsequently directed to reconsider *Calderone I* "in light of" *Felix*. *United States v. Calderone*, —— U.S. at ——, 112 S.Ct. at 1657.

*Gambino II* advances our inquiry significantly. That decision resulted from the Supreme Court's remand of *Gambino I* for reconsideration in light of *Felix, see United States v. Gambino*, —— U.S. ——, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992), a reconsideration that obliged the panel that had decided *Gambino I* to reassess its application of *Grady* to the jeopardy issue posed by successive conspiracy prosecutions. The panel ruled in *Gambino II* that *Felix* obliged it to abandon the prior ruling in *Gambino I*, which had upheld a jeopardy challenge to a conspiracy charge because of acquittals on prior conspiracy charges. In the view of the panel in *Gambino II*, *Felix* requires us to recede from the view that the Supreme Court's decision in *Grady*, rather than our own prior decision in *United States v. Korfant*, 771 F.2d 660 (2d Cir.1985), provides the basis for analyzing whether two conspiracies are the "same offense" for jeopar-

dy purposes. That view had been expressed by a majority of this panel in *Calderone I*, and followed by the panel in *Gambino I*. *Gambino II* has committed this Circuit to a return to *Korfant* analysis, in the aftermath of *Felix*, in deciding whether two conspiracies are the "same offense" for jeopardy purposes. We therefore understand our task to be to determine under *Korfant* whether the *Adamita* conspiracy and the conspiracy alleged in Count One of the pending indictment are the "same offense" for jeopardy purposes.

It will be recalled that *Korfant* identified several factors to be analyzed in determining whether two conspiracies are the same or different offenses. These include:

(1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

*Korfant*, 771 F.2d at 662.

Unfortunately, neither *Korfant* nor the decisions that have endeavored to apply it have explicitly clarified the analytic framework in which the identified factors are to be assessed. Specifically, they have not indicated whether, in considering the various *Korfant* factors, a court is to be influenced primarily by the extent to which the relevant facts pertinent to each factor overlap or by the extent to which they are distinct. Or, if the issue is thought of in geometric terms with the two conspiracies thought of as intersecting circles, is the emphasis on the extent of the area common to both circles or the extent of the area of each circle outside of the common area? For example, nearly all the facts relevant to a small conspiracy might be located within the "circle" of a large conspiracy, with the facts relevant to only one factor (for example, time) extending slightly outside the larger circle, yet the larger conspiracy might also encompass numerous facts outside the circle of the smaller con-

spiracy. If degree of commonality is important, the smaller conspiracy may be viewed as simply a part of the larger conspiracy, but if degree of difference is important, the numerous facts of the larger conspiracy not common to the smaller conspiracy would lead to a conclusion of separate conspiracies.

*Korfant* appears to have emphasized the degree to which relevant factors overlap. For example, it examined the time frames of the two conspiracies and noted that one lasted from as early as June 1977 to as late as October 1978, *Korfant*, 771 F.2d at 661, and the second lasted from as early as "the fall of 1978" to "late 1980," *id.* at 662, thus creating an overlap of perhaps two months (September and October of 1978). Similarly as to the overlap of conspirators, the opinion noted that Korfant and five persons or entities were conspirators in the first conspiracy, and that he and two persons or entities not charged in the first conspiracy were conspirators in the second conspiracy, thus creating an overlap of just one defendant (Korfant) out of the six defendants in the first and three in the second. *Id.* at 661–62. There was no overlap as to geography, since the first conspiracy concerned Ohio and the second concerned Connecticut and Massachusetts. The conspiracies were held to be separate.

Other decisions have sometimes emphasized the extent of overlap and sometimes emphasized the extent of differences. In *United States v. Mallah*, 503 F.2d 971 (2d Cir.1974), *cert. denied*, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975), the time frame of the first conspiracy was wholly contained within that of the second; the geographic scope of the first was the same as the second (New York City). The objecting defendant, Pacelli, was the only common defendant of the four charged in the first conspiracy and the seventeen charged in the second, though the other defendants in the first conspiracy were thought to be part of the organization operating the second conspiracy and vice-versa. *Id.* at 982–83. The conspiracies were held to be the same. *Id.* at 987.

In *United States v. Papa*, 533 F.2d 815 (2d Cir.), *cert. denied*, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976), the time frame of the second conspiracy was wholly contained within the first, and both operated in New York City. However, only two defendants overlapped out of twenty-two named defendants in the first and six named defendants and thirty-two unindicted co-conspirators in the second. The Court considered the two conspiracies to involve "two unrelated chains distributing narcotics," *id.* at 822, and held the conspiracies to be different for jeopardy purposes.

In *United States v. DeFillipo*, 590 F.2d 1228 (2d Cir.), *cert. denied*, 442 U.S. 920, 99 S.Ct. 2844, 61 L.Ed.2d 288 (1979), the geographic scope was different (New Jersey and Brooklyn), the object of the crimes was different (possession of stolen Yves St. Laurent suits and possession of stolen Schick shaving products), and there was no overlap in the time periods. There were four defendants in common out of seven in the first conspiracy and six in the second. *Id.* at 1234 & n. 7. The conspiracies were held to be different. *Id.* at 1235.

In *United States v. Russotti*, 717 F.2d 27 (2d Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984), involving RICO conspiracies, there was a partial overlap of the time frames, and only two defendants were named in both conspiracies, out of a total of eighteen. *Id.* at 33. The geographic scope was the same (Rochester, New York), but the principal activity was different (arson in one; extortion in the other). *Id.* at 34. The conspiracies were held to be different. *Id.*

In *United States v. Abbamonte*, 759 F.2d 1065 (2d Cir.1985), we considered the relationships of both a previously prosecuted New York conspiracy and a previously prosecuted Connecticut conspiracy to a later prosecuted Connecticut conspiracy. Both previously prosecuted conspiracies were within the geographic scope of the third conspiracy. The third conspiracy was wholly within the time frame of the previously prosecuted New York conspiracy and wholly within the somewhat shorter time frame of the previously prosecuted Con-

necticut conspiracy. The third conspiracy involved six defendants. Two of these were among six defendants in the previously prosecuted New York conspiracy. One defendant in the third conspiracy was among the four defendants in the previously prosecuted Connecticut conspiracy. *Id.* at 1066–67. The record supported the contention that the previously prosecuted conspiracies were "distribution phases," *id.* at 1067, of an overall narcotics network alleged in the third conspiracy. The Court held the defendants' showing sufficient to shift to the Government the burden of showing that the conspiracies were different, and remanded for that purpose. *Id.* at 1070.

In *United States v. Rivera,* 844 F.2d 916 (2d Cir.1988), the time frame of the first conspiracy (one day) was wholly contained within that of the second conspiracy. However, only one defendant was common to both conspiracies, the locus of the second conspiracy, although close, was distinct from that of the first, and there was no indication that the drugs sold in the prior conspiracy were marketed by the same organization alleged in the second conspiracy. The conspiracies were held to be different. *Id.* at 923–25.

In *United States v. Reiter,* 848 F.2d 336 (2d Cir.1988), we considered the relationship between two pairs of conspiracies, *Reiter I* and *Reiter III,* and *Reiter II* and *Reiter III.* With respect to *Reiter I* and *Reiter III,* there was one defendant (Reiter) in common out of the four in *Reiter I* and the seven in *Reiter III.* The time frame was wholly contained: *Reiter I* lasted from January 1980 to April 1983, and *Reiter III* from January 1980 to October 1987. *Id.* at 340–41. With respect to *Reiter II* and *Reiter III,* there were two common defendants out of the sixteen in *Reiter II* and the seven in *Reiter III.* The area of *Reiter II* (Manhattan) was wholly within the larger area of *Reiter III.* The time frame of the smaller conspiracy was wholly contained in the larger. The conspiracies involved different overt acts, although we are not told the degree of commonality, if any. *Id.* at 341. *Reiter III* was held to be

different from either of the previously prosecuted conspiracies.

In *Gambino,* the time frame and geographic scope of the first conspiracy were wholly contained within the second conspiracy. However, there was only slight overlap among the defendants; Gambino and two others were alleged to be members of both conspiracies, while the second one included fifteen co-defendants and twenty-seven co-conspirators. *United States v. Gambino,* 729 F.Supp. 954, 959 (S.D.N.Y. 1990). We are not told how many were in the first conspiracy. Of the overt acts, two of the fifty-two that involved Gambino in the second conspiracy were also involved in the first conspiracy, but again we are not told how many other overt acts were in the first conspiracy. *See Gambino II,* 968 F.2d at 229. The conspiracies were held to be different. *Id.* at 232.

As this review indicates, we have held conspiracies to be different where the facts of a smaller conspiracy, pertinent to some *Korfant* factors, such as time and geography, were wholly contained within a larger conspiracy so long as there were sufficient factors that shared only a slight overlap of facts or none at all. Where the facts of the smaller conspiracy were substantially overlapping with those of the larger conspiracy, we have either held the conspiracies to be the same, as in *Mallah,* or sufficiently similar to require the Government to prove that they are different, as in *Abbamonte.*

The pending case appears to be the first one to have reached this Court in which all of the facts pertinent to an identification of a conspiracy are wholly contained within a previously prosecuted conspiracy. The time frame of the second conspiracy is January 1, 1987, to March 31, 1988, wholly within the time frame of the first conspiracy, January 1, 1985, to June 30, 1988. The two defendants in the second indictment are the only ones named in that indictment, and are among the twenty-eight named in the earlier indictment. The geographic scope of the second (New York) is wholly contained within the larger scope of the first (Europe and the United States). The narcotics involved in the second are includ-

ed within the types of narcotics involved in the first. Though the twenty-one overt acts of the second were not all listed in the first, they are all in furtherance of the broader conspiracy alleged in the first. In short, the second conspiracy is simply a small component of the prior larger conspiracy. This is not technically an instance of a lesser included offense, because the larger conspiracy does not require proof of a discrete element not required for proof of the smaller conspiracy. But the essential factors identifying the scope of the smaller conspiracy are all "lesser included" within the larger conspiracy.

 In such circumstances, we conclude that, under *Korfant* analysis, the two conspiracies are the same for jeopardy purposes. The Government cannot be permitted to retry defendants on smaller and smaller conspiracies, wholly contained within the scope of a large conspiracy, until it finds one small enough to be proved to the satisfaction of a jury. We need not decide whether the Government would be permitted to proceed if it could show that evidence of a larger conspiracy came to its attention only after a prior prosecution for a smaller, wholly contained conspiracy, since that is not this case. Here, all of the Government's evidence of the smaller conspiracy was available when the Government sought to convict the defendants of the larger conspiracy. In such circumstances, if the Government wants to maintain the option of charging a small conspiracy in the event that its evidence is deemed insufficient to prove a large conspiracy, the Government must charge two counts at the outset. In that event, the Government would be entitled to an instruction directing the jury to consider the larger conspiracy first and go on to the second only if it does not find the larger one proven.[1] Here, however, the Government wants to subject the defendants not merely to sequential decision-making by one fact-finder in one trial, but wants to subject them to successive decision-making by two different fact-finders in two trials. That re-quires the defendants to run the gantlet twice, a result forbidden by the Double Jeopardy Clause.

*The telephone counts.* *Felix* makes clear that *Grady* should not be understood to alter the traditional rule that conspiracy and substantive offenses are different for purposes of double jeopardy. Since all of the telephone counts are substantive offenses, the Government contends that they are not barred by the prior acquittal on the conspiracy charge in the *Adamita* indictment. However, the matter is not so easily resolved. In the pending case, each of the telephone counts, Counts Two through Twenty–Five, involves a substantive offense that has as one of its elements the commission of at least one other felony. The Government has alleged that the telephone was used to commit either of two felonies—possession of heroin with intent to distribute and conspiracy to distribute heroin. Since we hold that the small conspiracy charged in Count One is the same offense, for jeopardy purposes, as the *Adamita* conspiracy, the Government cannot prosecute for a telephone substantive count by alleging use of the telephone to commit the very conspiracy prosecution of which, as a conspiracy, is barred. Collateral estoppel prevents the use of that maneuver to prove the conspiracy offense as an element of the substantive offense. However, the Government is entitled to proceed with the telephone counts to the extent that each count alleges use of the telephone to commit the substantive offense of possession of heroin with intent to distribute.

*The possession counts.* In light of *Felix*, and since no element of the possession counts requires proof of a conspiracy that is barred by double jeopardy protection, there is no obstacle to prosecution on Counts Twenty–Six through Twenty–Eight, charging possession of heroin with intent to distribute.

## Conclusion

The order of the District Court is reversed to the extent that it permits trial on

---

1. A district judge should have considerable discretion to make sure the prosecution does not confront the jury with a shopping list of several smaller and smaller conspiracies.

Count One, the conspiracy count. With respect to Counts Two through Twenty–Five, the telephone counts, the order is reversed to the extent that it permits the conspiracy alleged in Count One to be an object offense, but affirmed to the extent that it permits the possession of heroin to be an object offense. With respect to Counts Twenty–Six through Twenty–Eight, the possession counts, the order is affirmed. The case is remanded for proceedings consistent with this opinion.

MINER, Circuit Judge, concurring:

Adhering to my dissenting opinion in *United States v. Calderone*, 917 F.2d 717, 726–29 (2d Cir.1990) (*"Calderone I"*), and in light of *United States v. Gambino*, 968 F.2d 227 (2d Cir.1992) (*"Gambino II"*), I agree that the rule in *United States v. Korfant*, 771 F.2d 660 (2d Cir.1985) (per curiam), should be applied to determine whether the *Adamita* conspiracy and the conspiracy charged in the indictment at bar are the same offense for purposes of double jeopardy analysis. I have, however, reconsidered my dissenting opinion in regard to the *application* of the *Korfant* test to the facts of this case and now agree that prosecution of the pending conspiracy indictment is barred by the doctrine of double jeopardy. Upon a closer examination of all the facts and circumstances surrounding the two indictments, I now am convinced that the conspiracy charged here fits wholly within the conspiracy previously charged. All the essential evidence upon which the second conspiracy indictment is based formed part of the basis for the first conspiracy prosecution. Where one conspiracy is so completely subsumed within another, the double jeopardy doctrine must bar the second prosecution. If the *Korfant* rule cannot be applied to find double jeopardy in this case, then it cannot be invoked to make such a finding in any case. I therefore concur with Judge Newman's opinion in all respects.