UNITED STATES of America,

v.

COLEMAN COMMERCIAL CARRIER, INC., etc., et al., Defendants.

No. S1 01 Crim.1042(LAK).

United States District Court, S.D. New York.

Sept. 10, 2002.

Christopher P. Conniff, David Berardinelli, Boyd M. Johnson III, Anirudh Bansal, Assistant United States Attorneys, James B. Comey, United States Attorney, for United States.

Ronald L. Garnett, New York City, for Defendant Carl Coleman.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The superceding indictment in this case charges that defendants Carl Coleman, Coleman Commercial Carrier, Inc. ("CCC") and others conspired, in violation of 21 U.S.C. § 846, to violate the federal narcotics laws during the period from in or about 1997 to and including October 2001 by distributing and possessing with intent to distribute 1,000 kilograms and more of substances containing marijuana. Carl Coleman moves to dismiss the indictment[1] on the ground that the prosecution is barred by the Double Jeopardy Clause.

### I

*A. The First Prosecution*

On June 20, 2000, a grand jury in this district returned Indictment No. 00 Cr. 0678 (the "Irving Indictment"), Count One of which charged Derrick Irving, Carl Coleman, and fifteen other defendants with conspiring to violate the federal narcotics laws by distributing and possessing with intent to distribute 1,000 kilograms and more of marijuana during the period 1997 to and including June 6, 2000 (Count One). A second count charged Irving alone with a money laundering conspiracy.

The gist of the conspiracy count of the indictment, insofar as it may be inferred from the overt acts there charged and the

---

1. The motion was made with respect to the original indictment but not ruled upon prior to the return of the superceder. Counsel have agreed that the motion will be deemed applicable to the superseding indictment.

means and methods of the money laundering conspiracy alleged in Count Two, was that Irving operated a marijuana distribution organization in the New York area, that he sought to obtain marijuana for resale, and that Carl Coleman's alleged role in the conspiracy alleged in Count One was to arrange the transportation of marijuana from California to Irving's operation in New York. This is confirmed by the evidence at the trial of that indictment in January 2002 before Judge Hellerstein, a trial that resulted in the conviction of Coleman and some, but not all, of the other defendants. Coleman awaits sentencing on that conviction.

## B. This Prosecution

### 1. The Original Indictment

Indictment No. 01 Crim. 1042, returned on November 6, 2001, charged Carl Coleman, CCC and five other CCC officers and employees with conspiracy to distribute and possess with intent to distribute 1,000 kilograms and more of marijuana. The conspiracy allegedly began in 1997 and continued until September 2001 and, according to the indictment, involve the use of tractor trailer trucks controlled by the defendants to transport loads of marijuana on behalf of numerous narcotics organizations throughout the country. Carl Coleman's role was alleged to have involved coordination of the loading and transportation of the marijuana.

Prior to trial, the Court severed the case as to CCC,[2] and Carl Coleman made an untimely motion to dismiss the indictment

on double jeopardy grounds which the Court nevertheless took under advisement. The case against Coleman and the other individual defendants proceeded to trial. At the close of the proof, Coleman moved for judgment of acquittal on the ground of double jeopardy, and the Court reserved decision on that motion as well. The jury ultimately acquitted all of the individual defendants except Coleman, as to whom it was unable to agree. The Court therefore granted a mistrial, and the government ultimately decided to retry Coleman and to press the previously severed case against CCC.

### 2. The Superceding Indictment

Not long before the scheduled date for the new trial, now to be of both the Coleman and the corporation, the government filed a superceding indictment, No. S1 01 Crim. 1042(LAK). The new indictment made a number of changes, particularly relating to the charge against CCC, but in all respects material to the present motion is substantially the same as the original indictment. Accordingly, the double jeopardy challenge to the original indictment[3] applies to the superceding indictment as well.

## II

After the Supreme Court's decision in *United States v. Felix,*[4] the Second Circuit confirmed that the factors catalogued in *United States v. Korfant*[5] are pertinent "in determining whether two conspiracies

---

**2.** For some unknown reason, the government failed to serve CCC and to have it arraigned until the eve of trial. The Court was put to the choice of postponing the trial of the individual defendants to accommodate CCC's belated appearance or granting a severance to the company. It opted for the latter.

**3.** The challenge is raised both by way of the motions both to dismiss the original indict-

ment and for a judgment of acquittal pursuant to FED. R.CRIM P. 29 as well as by the application of the motion to dismiss to the superceding indictment.

**4.** 501 U.S. 378 (1992).

**5.** 771 F.2d 660 (2d Cir.1985).

are the 'same offense' for double jeopardy purposes."[6] Those factors include:

"(1) the criminal offenses charged in the successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between the alleged distinct conspiracies."[7]

As the Circuit has made clear, these factors are not an entirely satisfactory means of determining double jeopardy issues.[8] It has not always been clear, for example, whether the proper focus is on the degree of overlap or the degree of difference as to each factor.[9] Nevertheless, the Court proceeds to consider the *Korfant* factors in turn.

### A. Criminal Offenses Charged

All of the indictments charge the same criminal offense, conspiracy to distribute or possess with intent marijuana in violation of 21 U.S.C. § 846. As the Circuit held in *Macchia*, however, "[s]imilarity at this general level ... is of limited import."[10] The reason is straightforward: the abundance of entirely separate and independent narcotics distribution conspiracies demonstrates that the fact that two indictments charge narcotics conspiracies is not particularly probative of whether the charged conspiracies actually allege the same offense.

When one focuses on the charged conspiracies at a more specific level, the picture becomes clearer. The gist of the Irving conspiracy was the procurement and local distribution of marijuana in the New York area. The gist of the conspiracy charged in this case, on the other hand, is the formation and operation of an illicit agreement to operate a nationwide transportation service for illegal drugs—a sort of UPS for drug dealers.

### B. Overlap of Participants

There is almost no overlap of participants charged in the two indictments. The Irving Indictment charged seventeen defendants. The indictments now before this Court charge seven. Carl Coleman is the only defendant common to both. His presence in both is not persuasive as to the identity of the two alleged conspiracies.

In *Macchia*, the successive indictments at issue charged conspiracies to evade federal gasoline excise taxes through the use of transfers of gasoline down "daisy chains" of nominal transferees. One of two defendants common to both indictments provided an outlet to gasoline end users, a factor the moving defendant contended supported a conclusion that the two indictments charged the same overall scheme. But the Court of Appeals rejected that argument, saying that "the existence of a single conduit does not establish proof of a single conspiracy," as the indications were that the conduit performed that role for two distinct schemes.[11]

This aspect of *Macchia* is instructive here. While Coleman is common to and allegedly played substantially the same role in both charged conspiracies—arranging transportation of marijuana to local distributors—the essence of the two schemes was quite different. Thus, while

---

6. *United States v. Macchia,* 35 F.3d 662, 668 (2d Cir.1994).

7. *Korfant,* 771 F.2d at 662.

8. *E.g., United States v. Calderone,* 982 F.2d 42, 45–46 (2d Cir.1992).

9. *Id.*

10. 35 F.3d at 669.

11. 35 F.3d at 669.

the conspiracies overlap to the minor extent that Coleman is common to and allegedly played a similar role in each, their overall thrust was quite different.

### C. Overlap of Time

The time period alleged in the Irving Indictment was 1997 to and including June 6, 2000. The initial indictment here covers the period 1997 to and including September 2001 while the superceding indictment alleges that the conspiracy extended to and including October 2001. The time period in the Irving Indictment therefore is entirely included in the present indictments.

### D. Similarity of Operation

The extent of the similarity of the operations of the two alleged conspiracies depends upon the vantage point from which the analysis is conducted. As indicated above, the fundamental object of the conspiracy charged in the Irving Indictment was the procurement and distribution in the New York area of marijuana while that charged here was the transportation of drugs from the west coasts to distribution organizations all over the country, which is quite a different matter. On the other hand, Coleman's alleged role in each was precisely the same—arranging for the transportation from supplier to local distributor.

### E. Existence of Common Overt Acts

The Irving Indictment alleged 15 overt acts. The original indictment in this case charged 12 and the superceder four. There appears to be one overt common to all.[12]

### F. The Geographic Scope of the Alleged Conspiracies

The conspiracy charged in this case was national in scope while that in the Irving Indictment focused heavily on the New York area. The latter therefore falls entirely within the former.

### G. Common Objectives

As noted earlier, the central object of the conspiracy charged in the Irving Indictment—the distribution of marijuana in New York—was quite different from that at issue here, the transportation of marijuana from the west coast to distributors around the country. Nevertheless, transportation of drugs purchased by the Irving organization from west coast suppliers to New York, the role that Coleman played, was comprehended within the scope of both alleged conspiracies.

### H. Degree of Interdependence

"This factor requires [the Court] to consider the extent to which the success or failure of one conspiracy is independent of a corresponding success or failure by the other."[13]

In this case, there was a relationship between the success of the two conspiracies at issue. The Irving conspiracy, although its central object was the local distribution of the drugs, depended for its success on a stable source of supply which in turn depended upon Coleman's ability to move the marijuana from California to New York. Likewise, the success of the Coleman transportation operation depended on the ability of local distributors like

---

12. All allege that Coleman loaded marijuana onto a tractor-trailer truck on May 19, 2000. Irving Indictment ¶ 3k; Original Indictment ¶ 4j; Superceding Indictment ¶ 2b. (While the Irving Indictment alleges that the truck was in Los Angeles, and the indictments in this case allege it was in Ontario, California, the Court notes that Ontario lies just east of the City and County of Los Angeles. It therefore appears that these overt acts actually are one and the same and, in any case, that a jury could so find.)

13. *Macchia,* 35 F.3d at 671.

Irving to move the product in their local markets. But this point cannot be taken too far, as the Coleman operation could well have succeeded without Irving as long as a sufficient number of other local distributors called upon its services. In consequence, while there was a degree of interdependence, the interdependence was far from complete.

\* \* \* \* \* \*

Having analyzed the *Korfant* factors, which the case made clear are not an exhaustive list of pertinent considerations,[14] the question whether the two conspiracies are the "same offense" for double jeopardy purposes remains. The answer is not quite as clear as the government contends.

In practical terms, all local narcotics distribution operations that purchase drugs, as it were, "F.O.B." a distant location require a means of transporting the drugs to their local markets. Given the fact that one who agrees to supply or transport drugs to a distribution operation consciously adheres to the distributor's unlawful object of distributing the drugs or possessing them with the intent to distribute in the distributor's area of operations, the transporter is properly chargeable as part of the local distribution conspiracy, which is precisely what the government did in indicting Coleman in the Irving case. On the other hand, the transporter, if he or she does not act alone in providing the transportation service, is party also to a different illicit agreement—an agreement with those involved in the transportation operation to provide that service to local distributors and thus chargeably with a transportation conspiracy as well, which is what the government has done here. The difficulty arises because anyone who knowingly participates in a scheme to provide drug transportation services to local distributors probably is chargeable also with agreeing to further the objectives of the local distributors and therefore indictable with them as well as with any cohorts in the transportation business. Thus, it appears, in a vague sense, to be unfair to subject a transporter or other similarly situated intermediary to prosecution first for adhering to a local distribution conspiracy and then to prosecute him for being party to a conspiracy to provide the same transportation service to local distribution organizations generally—local distribution organizations that include, but certainly are not limited to, the particular organization charged in the first indictment. And that is precisely Coleman's situation. He was charged with knowingly facilitating Irving's New York area distribution operation and now stands accused of conspiring to provide transportation services to local drug dealers generally.

While the question is not free from doubt, the Court is persuaded that the alleged unfairness is more apparent than real. The essence of the crime of conspiracy is the agreement to achieve an illegal object. And when one focuses closely on what is essential to convict, it becomes apparent that the two conspiracies actually are quite different.

The prosecution triggered by the Irving Indictment charged in essence a scheme to distribute drugs in the New York area and to do that which was required to procure the necessary supply. In order to convict Coleman of that conspiracy, the government was obliged to prove that Coleman, knowing of the illegal purpose of the Irving organization, agreed to further *its* illegal objective. The principal manner in which he did that was by arranging transportation.

---

14. *See Korfant,* 771 F.2d at 662 (eight enumerated factors "[a]mong those" that are pertinent).

Here, in contrast, the core of the unlawful agreement charged in the indictments of Coleman and his co-defendants is that they would act together to operate a transportation service for contraband. Thus, the essence of the agreement among Coleman and his co-defendants was analytically distinct from that charged in the Irving Indictment. This difference, especially when taken together with other *Korfant* factors such as the relative lack of overlap in participants, the differences in objectives and geographic scope, the relative lack of common overt acts, and the limited degree of interdependence, all lead the Court to conclude that the conspiracies charged here and in the Irving Indictment are not the "same offense" and that this prosecution does not violate the Double Jeopardy Clause.

### Conclusion

For the foregoing reason, Carl Coleman's motions to dismiss the indictment and the superceding indictment and for judgment of acquittal on the original indictment all are denied.

SO ORDERED.